UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE UNITED STATES
1255 23rd St., NW
Suite 450
Washington, DC 20037

        *Plaintiff*,

      v.

THE ANIMAL AND PLANT HEALTH INSPECTION
SERVICE,
4700 River Rd.
Riverdale, MD 20737;

THE UNITED STATES DEPARTMENT
OF AGRICULTURE
1400 Independence Ave., SW
Washington, DC 20250

SONNY PERDUE, in his official capacity as
Secretary of United States Department of
Agriculture,
1400 Independence Ave., SW
Washington, DC 20250

        *Defendant*s.

Civil Action No. 18-646

**Complaint for Declaratory and
Injunctive Relief**

INTRODUCTION

1.      The United States Department of Agriculture ("USDA") is withholding from

public scrutiny critical information contained in records subject to release under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552. These records and the redacted information therein

pertain to animal welfare and individuals engaged in commercial activities regulated under the

Animal Welfare Act ("AWA"), 7 U.S.C. § 2131, *et seq*. The Humane Society of the United

1

States ("HSUS" or "Plaintiff") requests that this Court compel disclosure of the requested records without unlawful redactions.

2.    Animal welfare is an issue of significant public interest, important to such diverse stakeholders as animal protection advocates, consumers, journalists, local and state governments, responsible breeders and exhibitors, and many others. Many commercial dog breeders utilize abusive practices that cause suffering to mother dogs and their puppies; roadside zoos systemically house wild animals in conditions that not only harm the animals, but also pose serious risk to visitors; and research laboratories subject nonhuman primates and other animals to environments that undermine their psychological wellbeing. USDA regulates each of these animal industries pursuant to the AWA.

3.    To evaluate the wellbeing of animals kept by regulated facilities, USDA's Animal and Plant Health Inspection Service ("APHIS") performs inspections of these facilities and generates inspection reports that document whether the facilities are meeting the federal welfare standards at the time of the inspection. The information contained in the reports is crucial to understanding whether USDA is adequately undertaking its regulatory role and enforcing the law with respect to animal industries.

4.    For decades, APHIS made AWA inspection reports available to the public with redactions limited to only signatures and the report recipient title. Since 2012, this information had been available in a publicly accessible, searchable database. In 2017, after suddenly removing this database from its website without notice to the public, USDA posted limited information from select inspection reports for select facilities—but, for many facilities, key identifying and substantive report information is redacted when posted on the agency's website. For example, USDA has posted certain inspection reports but has redacted all identifying

information, such as customer ID number, certificate number, and the name of the facility. Further, for many regulated facilities, it appears that APHIS has not reposted *any* inspection reports on its website, including reports that it had previously released in full.

5.  Without knowing which inspection reports are attributed to which facilities, HSUS (as well as consumers, state law enforcement officials, and other interested individuals and parties) cannot realistically use or rely on these online records to understand or evaluate the government's activities and compliance with its regulatory obligations. Relatedly, consumers, pet stores, local and state government agencies, and others rely on inspection reports to determine if businesses they are dealing with have been in compliance with the AWA, and how those businesses are treating the animals in their care.

6.  Because APHIS has publicly posted limited records in a format that is unusable for practical purposes, and because APHIS appears to have entirely failed to post any records for certain facilities it inspects, HSUS sought to obtain records from the agency by requesting inspection reports for specific AWA licensees under FOIA. When the agency finally released responsive records (long after the statutory deadline had passed), they were heavily redacted in a manner that renders them useless.

7.  The agency's asserted authority for the redactions—FOIA Exemptions 6 and 7(C)—is wholly unjustified and conflicts with well-established agency and judicial interpretations of those provisions.

8.  Accordingly, HSUS files this lawsuit to compel the agency to produce the information that it is unlawfully withholding and asks the Court to deem as arbitrary and capricious the agency's unreasoned divergence from its long-standing policy that key information contained in these records is public.

3

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B), 702, 706, and 28 U.S.C. § 1331.

10.      Venue is proper in the District of Columbia under 5 U.S.C. §552(a)(4)(B) and 28 U.S.C. § 1391(e). This action is brought against an agency of the United States, Defendants maintain offices in the District of Columbia, and Plaintiff has its principal place of business in the District of Columbia. 5 U.S.C. § 552(a)(4)(B); 28 U.S.C § 1391(e).

## PARTIES

11.      Plaintiff The Humane Society of the United States is the nation's largest animal protection organization. A non-profit organization headquartered in Washington, D.C., HSUS and its affiliates have regional offices and multiple direct animal care facilities located throughout the country, and international offices throughout the world. HSUS engages in legislative advocacy, public education, and litigation to combat animal abuse and exploitation, and to promote the protection and welfare of all animals. HSUS provides its members, the public, and the press with information on a broad spectrum of animal welfare issues, including the welfare of animals used for commercial breeding, roadside zoos, research labs, and other operations regulated under the AWA. Having timely access to APHIS inspection records is key to HSUS's ability to perform these functions, as these records reveal critical information about APHIS's administration of the statutes under its purview. Additionally, HSUS utilizes this information to draft and defend state legislation, develop and promote its animal protection campaigns, and petition the federal government for welfare reforms, among other things. APHIS's unlawful withholding of this public information harms the interests of HSUS members

and the organization itself, injuries that would be remedied if this Court were to grant the relief requested in this Complaint.

12.     Defendant Animal and Plant Health Inspection Service is a federal governmental agency within the meaning of 5 U.S.C. § 552(f)(1), and is an agency within USDA. APHIS has possession and control of the records HSUS requested, and as such, is subject to FOIA pursuant to 5 U.S.C. § 552(f).

13.     Defendant United States Department of Agriculture is a federal governmental agency within the meaning of 5 U.S.C. § 552(f)(1). USDA, as the parent agency of APHIS, has possession and control of the records HSUS requested, and as such, is subject to FOIA pursuant to 5 U.S.C. § 552(f).

14.     Defendant Sonny Perdue is the Secretary of the United States Department of Agriculture and has ultimate responsibility for decisions made by USDA and APHIS, as an office within his Department. He is sued in his official capacity.

## LEGAL FRAMEWORK

### The Freedom of Information Act

15.     FOIA requires agencies of the federal government to release information to the public upon request, unless the agency demonstrates that one of the nine specific exemptions applies. 5 U.S.C. § 552(a)(3)(A), (b). FOIA's "basic purpose" is to "open agency action to the light of public scrutiny," and Congress structured FOIA to reflect "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (citations omitted).

16.     Upon receiving a FOIA request, an agency has twenty working days to respond to the request. 5 U.S.C. § 552(a)(6)(A)(i). If the agency withholds any information responsive to a

FOIA request, the agency must, within twenty working days, "immediately notify" the requestor "of determination and the reasons therefor." *Id.*

17.     If the agency determines that it will withhold responsive records or information, the agency has the burden to demonstrate that a particular exemption applies to the requested material, and to meet this burden the agency must provide precise and detailed reasons for withholding the information in its response to a request. *Id.* § 552(a)(4)(B), (b). If the agency decides that portions of responsive records are exempt from disclosure, the agency must provide "[a]ny reasonably segregable portion" after redacting the exempt information, and must explain why the redacted portions were withheld. *Id.* § 552(b).

18.     FOIA Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6).

19.     FOIA Exemption 7(C) allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

20.     A requestor may file an administrative appeal of an agency's failure to disclose requested records in part or in full. *Id.* § 552(a)(6)(A)(i)(III), (a)(6)(A)(ii). An agency must make a determination on any such appeal within twenty working days. *Id.* § (a)(6)(A)(ii). Agencies may not toll this time period unless awaiting additional requested information. *Id.* § 552(a)(6)(B)(ii)(I).

21.     Judicial review of the agency's interpretation of a FOIA exemption is *de novo*. *Id.* § 552(a)(4)(B).

*The Administrative Procedure Act*

22.     The Administrative Procedure Act ("APA") provides for judicial review of final agency action for persons adversely affected or aggrieved by the agency action. *Id.* § 702.

24.     The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

25.     An agency action is arbitrary and capricious if the agency's analysis is internally inconsistent or inadequately explained. *Gen. Chem. Corp. v. United States*, 817 F.2d 844, 857 (D.C. Cir. 1987).

26.     An agency action is arbitrary and capricious if the agency diverges from prior policies and standards without providing a reasoned explanation for why it changed course. *Ramaprakash v. Fed. Aviation Admin.*, 346 F.3d 1121, 1124-25 (D.C. Cir. 2003).

*The Animal Welfare Act*

23.     The Animal Welfare Act regulates the care, sale, transportation, and handling of most warm-blooded animals used for exhibition, bred for the pet trade, or used in animal research facilities, and is enforced by USDA through APHIS. 7 U.S.C. §§ 2131-2159.

24.     Under the AWA, facilities that qualify as "dealers" or "exhibitors" are required to maintain a license issued by USDA, and are subject to the requirements of the AWA and its implementing regulations. *Id.* §§ 2133, 2134. The term "dealer" includes those whose business involves breeding animals for sale (class "A" licensees, or "breeders"), as well as those whose business involves buying or selling animals that they do not breed (class "B" licensees). 9 C.F.R. § 1.1. Commercial breeders are regulated as dealers under the AWA as either class A or class B licensees, with certain limited exceptions. The term "exhibitor" includes those who exhibit

animals to the public for compensation. *Id.* Zoos and aquariums are regulated as exhibitors under the AWA and are required to obtain a class C license.

25.     Facilities regulated under the AWA are subjected to periodic inspections by APHIS personnel to determine compliance with the AWA. *See, e.g.*, *id.* §§ 2.1(a)(1), 2.3, 2.126. APHIS inspectors routinely generate inspection reports as a means of documenting the results of such inspections, including observed noncompliances. *See id.* § 2.126(a)(5).

26.     The content of an AWA inspection report frequently includes, but is not limited to, a substantive summary of the inspection, type of non-compliant item(s) found, licensee's full address including city and state, inspection ID number, inspection type, inspection date, and recipient's name and title. Additional data generated by inspections include, but is not limited to, species and numbers of animals held at the facility, methods of euthanasia used on the animals, veterinary protocols, such as routine vaccinations, species subjected to certain medical tests, animals' medical histories, and photographs or videos. (Inspection reports and related records hereinafter referred to as "Inspection Information").

### FACTS GIVING RISE TO CAUSES OF ACTION

*HSUS's FOIA Requests and Administrative Appeals*

27.     HSUS submitted two discrete FOIA requests to APHIS at issue in this case: the first on July 14, 2017, and the second on July 26, 2017.

28.     The July 14, 2017 request asked for "complete copies of all inspection reports from January 1, 2015 to the time the agency fulfills this request, for any USDA-licensed facilities operating under USDA Certificate No. 52-C-0035." This USDA certificate is issued to Karl Mogensen, who operates Natural Bridge Zoo in Natural Bridge, Virginia, a facility with a history of egregious AWA noncompliance, as documented in an undercover investigation by

HSUS in 2014. *See* HSUS, The HSUS Investigates: Natural Bridge Zoo in Natural Bridge,

Virginia (2015), http://www.humanesociety.org/assets/pdfs/wildlife/exotics/roadside-zoo-

natural-bridge.pdf. On the same day this FOIA request was submitted, APHIS acknowledged

receipt of this request and assigned tracking number 2017-APHIS-05532-F to this request.

29.     The July 26, 2017 FOIA request asked APHIS for "copies of inspection reports

created or obtained in 2016 or 2017 for the following dealers:

- Marvin Burkholder/Berlin Kennel – Millersburg, OH (# 31-A-0224)

- Owen Yoder – Millersburg, OH (# 31-A-0198)

- Little Puppies Online – Mount Vernon, OH (# 31-B-0174)

- Evergreen Designer LLC – Charm, OH (# 31-A-0412)."

The next day, on July 27, 2017, APHIS acknowledged receipt of this request and assigned

tracking number 2017-APHIS-05755-F to this request.

30.     On August 11, 2017, APHIS's response to HSUS's July 14, 2017 request (2017-

APHIS-05532-F) became due.

31.     On August 23, 2017, APHIS's response to HSUS's July 26, 2017 request (2017-

APHIS-05755-F) became due.

32.     On January 25, 2018, HSUS sent APHIS and USDA a letter informing the agency

that APHIS's responses to these FOIA requests were well overdue, and that HSUS intended to

seek judicial review if APHIS failed to issue a final determination under FOIA within seven

calendar days.

33.     On the same day and in direct response to this notice of intent to sue, after

substantial delay and well after the statutory deadline imposed under FOIA (5 U.S.C. §

552(a)(6)(A)(i)), APHIS issued its response to the July 26, 2017 FOIA request #2017-APHIS-

05755-F. In its response, the agency produced 19 pages of documents but stated that "[t]he documents have been redacted in part under FOIA Exemption 6 and 7(c)." Among the Inspection Information redacted was the *entirety* of the substantive summaries of all inspections, types of non-compliant item(s) found, licensees' full addresses including city and state, inspection ID numbers, inspection types, and inspection dates ("Redacted Dealer Information"). APHIS advised Plaintiff of its right to appeal this determination.

34.     On January 30, 2018, in direct response to HSUS's notice of intent to sue, after substantial delay and well after the statutory deadline imposed under FOIA (5 U.S.C. § 552(a)(6)(A)(i)), APHIS issued its response to the July 14, 2017 FOIA request #2017-APHIS-05532-F. In its response, the agency identified 800 pages of responsive documents and 11 responsive videos, but stated that "certain information is exempt from release pursuant to FOIA Exemption (b) (6) and (b)(7)(c)." Among the Inspection Information redacted were: the exhibitor's business address; inspection type, inspection ID, and date of inspection; the entire substance of all inspection reports, including any documentation of AWA violations; species and numbers of animals held at the facility; methods of euthanasia used on the animals; veterinary protocols, such as routine vaccinations; species subjected to certain medical tests; animals' medical histories; the *entirety* of all 663 photographs; and the *entirety* of all 11 videos ("Redacted Exhibitor Information"). APHIS advised Plaintiff of its right to appeal this determination.

35.     On February 12, 2018, HSUS submitted appeals for both the January 25, 2018 FOIA response to FOIA request #2017-APHIS-05755-F and the January 30, 2018 response to FOIA request #2017-APHIS-05532-F.

36.     In its appeal relating to FOIA request #2017-APHIS-05755-F, HSUS stated that:

a. FOIA Exemptions 6 and 7(C) do not apply to the Redacted Dealer Information, because there is no privacy interest at issue, and even if there were, the public interest in disclosing this information clearly outweighs any privacy interest;

b. The threshold inquiry of FOIA Exemption 7 does not apply to Redacted Dealer Information, because this data was not compiled for law enforcement purposes; and

c. USDA's redactions were arbitrary and capricious because, among other reasons, USDA did not adequately explain its diversion from its long-held policy of releasing this information.

37. In its appeal relating to FOIA request #2017-APHIS-05532-F, HSUS stated that:

a. FOIA Exemptions 6 and 7(C) do not apply to Redacted Exhibitor Information, because there is no privacy interest at issue, and even if there were, the public interest in disclosing this information clearly outweighs any privacy interest;

b. The threshold inquiry of FOIA Exemption 7 does not apply to at least some of the Redacted Exhibitor Information, because this data was not compiled for law enforcement purposes;

c. USDA failed to release reasonably segregable portions of responsive records, and

d. USDA's redactions were arbitrary and capricious because, among other reasons, USDA did not adequately explain its diversion from its long-held policy of releasing this information.

38.     By letters to Plaintiff dated February 12, 2018, APHIS acknowledged receipt of Plaintiff's appeals, assigning #2018-APHIS-00187-A to the appeal regarding FOIA request #2017-APHIS-05755-F, and #2018-APHIS-00188-A to the appeal regarding FOIA request #2017-APHIS-05532-F.

39.     USDA's statutory deadline to respond to these FOIA appeals was March 13, 2018. 5 U.S.C. § 552(a)(6)(A)(ii). USDA made no request for additional information that might necessitate a tolling of this deadline.

40.     On March 12, 2018, one day before APHIS's statutory deadline, the agency contacted HSUS to state that it did not intend to meet its deadline with respect to appeal #2018-APHIS-00187-A, and provided no estimated date of completion. On March 13, 2018, the day of APHIS's statutory deadline, the agency contacted HSUS to state that it did not intend to meet its deadline with respect to appeal #2018-APHIS-00188-A, and provided no estimated date of completion.

41.     On March 14, 2018, APHIS sent its final response to appeal #2018-APHIS-00187-A. The agency's response reiterated its original position that the Inspection Information was properly redacted under Exemptions 6 and 7(C) with the exception of one document. This one document contained none of the previous redactions and was an AWA inspection report of a dealer registered as a limited liability corporation.

42.     In its response to the appeal, APHIS made clear its new policy that, for purposes of Exemptions 6 and 7(C), the agency treats facilities that it considers "individuals/homestead businesses" entirely differently from facilities it considers "non-residential businesses." On information and belief, APHIS intends to abide by this new interpretation and approach in its evaluation of whether to release any inspection report moving forward.

43.     As of the date of this Complaint, USDA has not responded to Plaintiff's appeal

#2018-APHIS-00188-A.

*USDA's History of Releasing AWA Inspection Information*

44.     Prior to 2017, USDA routinely made AWA Inspection Information publicly

available.

45.     Previously, USDA routinely and consistently released AWA Inspection

Information to the public and to HSUS in response to FOIA requests, without broadly applying

the statutory redactions at issue here. Such released Inspection Information has routinely and

consistently included (among other things) the substance of the inspection reports, the name

address of the licensee, inspection type, non-compliant item(s) found, animal inventories, and

photographs. For example,

     a.     HSUS submitted a FOIA request on or around October 23, 2007 for AWA

        inspections reports for the prior two years that reflect or refer to certain

        animal welfare violations. In response, APHIS produced responsive

        inspection reports with none of the contested redactions.

     b.     HSUS submitted a FOIA request on or around June 22, 2010 for

        inspection records of breeder Isaac Martin, AWA License No. 31-A-0015.

        In response, APHIS produced all responsive inspection reports with none

        of the contested redactions.[1]

     c.     HSUS submitted a FOIA request on May 24, 2013 for inspection records

        of exhibitors Greg and Karen Woody, AWA License No. 33-C-0218. In

---

[1] APHIS originally produced additional materials with limited redactions, but those redactions were held invalid by this Court. *See Jurewicz v. U.S. Dep't of Agric.*, 891 F.Supp.2d 147 (D.D.C. 2012).

response, APHIS produced all responsive inspection reports, redacting *only* signatures and personal e-mail addresses, and all responsive photographs with no redactions.

d.     HSUS submitted a FOIA request on July 30, 2015 for inspection records of exhibitor Connie Braun Casey, AWA License No. 43-C-0315. In response, APHIS produced all responsive inspection reports with no redactions, and all responsive photographs with no redactions.

e.     HSUS submitted a FOIA request on August 5, 2015 for inspection records of dealer Sam Hostetler, AWA License No. 43-B-0361. In response, APHIS produced all responsive inspection reports with no redactions, and all responsive photographs with no redactions.

46.     In 2012, APHIS improved access to AWA inspection reports by establishing a publicly accessible, searchable online database containing tens of thousands of pages of inspection reports. HSUS frequently accessed this database and synthesized information contained therein, as did many other organizations, members of the public, and members of the regulated industries. Included on that database, for example, were multiple Natural Bridge Zoo inspection reports, without the redactions that APHIS applied to the reports in response to the FOIA request at issue here.

47.     On February 3, 2017, APHIS abruptly, and without any prior notice to the public, removed this database from its website, hiding all of these previously accessible records from public view. *See* APHIS, Updates to APHIS's Website Involving Animal Welfare Act and Horse Protection Act Compliance Information AWA Inspection and Annual Reports,

https://www.aphis.usda.gov/aphis/newsroom/stakeholder-info/SA_By_Date/SA-2017/SA-02/awa-hpa-compliance (last visited March 20, 2018).

48.     Following demands from HSUS and members of Congress to USDA, and widespread public outcry at USDA's sudden move to shield animal welfare violations from the public, the agency restored online access to bits and pieces of records that were previously housed on its inspection reports database.

49.     In March of 2017, HSUS began submitting FOIA requests to APHIS, including the two at issue in this Complaint, for the type of AWA records, such as inspection reports documenting violations of the AWA, that were once publicly available.

50.     Shortly thereafter, APHIS updated its website to state that those "seeking information from APHIS regarding inspection reports not currently posted to the website, regulatory correspondence, and enforcement related matters" should submit FOIA requests for such information. *See* APHIS, AWA Inspection and Annual Reports, https://www.aphis.usda.gov/aphis/ourfocus/animalwelfare/sa_awa/AWA-Inspection-and-Annual-Reports (as modified Apr. 5, 2017).

51.     Inspection Information covered by the Dealer FOIA request at issue here is not available on APHIS's current public database, as far as HSUS can reasonably ascertain. Some of the dealers at issue do not appear on the database at all. Others *may* be on the database, but since information identifying the facility has been redacted it is impossible to search for these facilities. The new database does include some, but not all, inspection reports for Natural Bridge Zoo that reveal the content of AWA citations that APHIS redacted in response to the FOIA request at issue here. *See* APHIS, AWA Inspection and Annual Reports, https://www.aphis.usda.gov/aphis/ourfocus/animalwelfare/sa_awa/AWA-Inspection-and-

Annual-Reports (last visited Mar. 20, 2018) ("APHIS recently reposted *certain* inspection reports . . . that were determined to be appropriate for reposting. . . . The agency will continue to review records and determine which information is appropriate for reposting.") (emphasis added).

52.     Accordingly, while the agency previously allowed for transparency of inspection reports through its comprehensive online database, and transparency of other Inspection Information through FOIA requests, it now fails to provide timely access to these records and, contrary to its past actions, has established a new policy of unlawfully redacting much of the content of the records.

*Importance of AWA Inspection Records*

53.     Because APHIS uses AWA inspections to evaluate the well-being of animals used in regulated facilities and generates inspection reports that document the agency's assessment of noncompliance of federal animal welfare standards, it is imperative that basic information in these reports pertaining to such care is publicly available.

54.     APHIS's Inspection Information is invaluable information, not only for USDA, but also for state and local governmental entities, as well as the public. The information contained in these records is crucial to ensuring that consumers are able to make informed decisions, for HSUS and the public to draft enforcement complaints to federal, state, and local government agencies, and to shine a light on whether USDA is adequately undertaking its regulatory role with respect to animal industries.

55.     Public scrutiny of APHIS's administration of the AWA is critical, as USDA's Officer of the Inspector General ("OIG") has consistently issued reports finding that APHIS's inspection and enforcement activities under the AWA are deficient. *See, e.g.,* OIG, APHIS:

Animal Welfare Act – Marine Mammals (Cetaceans) (May 2017), available at

https://www.usda.gov/oig/webdocs/33601-0001-31.pdf; OIG, Controls Over APHIS Licensing

of Animal Exhibitors (June 2010), available at https://www.usda.gov/oig/webdocs/33601-10-

CH.pdf; OIG, APHIS Animal Care Program Inspections of Problematic Dealers (May 2010),

available at https://www.usda.gov/oig/webdocs/33002-4-SF.pdf; OIG, APHIS Animal Care

Program Inspection and Enforcement Activities (Sept. 2005), available at

https://www.usda.gov/oig/webdocs/33601-0002-41.pdf. The public interest in Inspection

Information is thus heightened because the information could shed light on possible government

wrongdoing, such as whether the agency is failing to properly administer its animal care

program.  For example, HSUS often receives information related to animal abuse or neglect at

AWA licensed facilities, but without access to USDA Inspection Information HSUS cannot

evaluate whether APHIS has inspected that facility or held it accountable under the AWA.

     56.    Additionally, consumers, pet stores, local and state government agencies, and

others rely on these reports in order to determine if businesses they are dealing with have not

been in compliance with the AWA, and how they are treating the animals in their care. Several

state laws mandate that pet stores acquire puppies from breeders with either no or a limited

history of violations, or limit the possession of exotic animals to exhibitors with AWA licenses

in good standing, and AWA inspection reports are indispensable to determining compliance with

these laws. AWA inspection reports allow the public to understand how APHIS administers the

AWA and its regulations promulgated thereunder.

## CLAIMS FOR RELIEF

*Count 1: Defendants Unlawfully Withheld Dealer Information
that is Required to be Released*

57.     Plaintiff hereby incorporates by reference Paragraphs 1-56 as if fully set forth herein.

58.     Plaintiff has a statutory right of access to the public records requested under FOIA, 5 U.S.C. § 552(a)(3), and there is no lawful basis for Defendants' withholding of the information contained in the AWA inspection records under FOIA Exemption 6 or 7(C), in response to HSUS's July 26, 2017 FOIA request (#2017-APHIS-05755-F). *Id*. § 552(a)(3)(A), (b)(6), (b)(7)(C).

59.     The Redacted Dealer Information is not exempt as "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" under FOIA Exemption 6. *Id.* § 552(b)(6).

60.     The Redacted Dealer Information is not exempt as "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(7)(C).

61.     As the requested records were improperly withheld under Exemptions 6 and 7(C), Defendants violated Plaintiff's legal right to access these records under 5 U.S.C. § 552(a)(3).

*Count 2: Defendants Unlawfully Withheld Exhibitor Information
that is Required to be Released*

62.     Plaintiff hereby incorporates by reference Paragraphs 1-61 as if fully set forth herein.

63.     Plaintiff has a statutory right of access to the public records requested under

FOIA, 5 U.S.C. § 552(a)(3), and there is no lawful basis for Defendants' withholding of the

information contained in the AWA inspection records under FOIA Exemption 6 or 7(C), in

response to HSUS's July 14, 2017 FOIA request (#2017-APHIS-05532-F). *Id*. § 552(a)(3)(A),

(b)(6), (b)(7)(C).

64.     The Redacted Exhibitor Information is not exempt as "personnel and medical files

and similar files the disclosure of which would constitute a clearly unwarranted invasion of

personal privacy" under FOIA Exemption 6. *Id.* § 552(b)(6).

65.     The Redacted Exhibitor Information is not exempt as "records or information

compiled for law enforcement purposes, but only to the extent that the production of such law

enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of

personal privacy." *Id.* § 552(7)(C).

66.     Defendants have further wrongfully withheld agency records requested by

Plaintiff by failing to comply with the statutory time limit for rendering a decision on Plaintiff's

appeal #2018-APHIS-00188-A.

67.     As the requested records were improperly withheld under Exemptions 6 and 7(C),

and Defendants failed to timely respond to Plaintiff's appeal, Defendants violated Plaintiff's legal

right to access these records under 5 U.S.C. § 552(a)(3).

*Count 3: Defendants Unlawfully Withheld Segregable Portions*
*of Public Information*

68.     Plaintiff hereby incorporates by reference Paragraphs 1-67 as if fully set forth

herein.

69.     Plaintiff has a statutory right of access to the public records requested under

FOIA, 5 U.S.C. § 552(a)(3), but if the agency decides that portions of responsive records are

exempt from disclosure, the agency must provide "[a]ny reasonably segregable portion" after redacting the exempt information, and must explain why the redacted portions were withheld. *Id.* § 552(b).

70.     In response to Plaintiff's FOIA request #2017-APHIS-05532-F, Defendants improperly withheld the *entirety* of 663 photographs and 11 videos without releasing reasonably segregable portions.

71.     As the requested records were improperly withheld and non-exempt responsive information was not segregated pursuant to 5 U.S.C. § 552(b), Defendants violated Plaintiff's legal right to access these records under 5 U.S.C. § 552(a)(3).

*Count 4: Defendants Unlawfully Failed to Explain*
*Their New Policy of Withholding AWA Inspection Report Information*

72.     Plaintiff hereby incorporates by reference Paragraphs 1-71 as if fully set forth herein.

73.     Defendants' January 25, 2018 FOIA response and Defendants' January 30, 2018 FOIA response were each final agency actions, and Defendants' response to appeal #2018-APHIS-00187-A was a final agency action (collectively, "Defendants' Responses"). Defendants have constructively denied Plaintiff's appeal #2018-APHIS-00188-A, and Plaintiff has exhausted all of its administrative remedies. *Id.* § 552(a)(6)(A)(ii), (a)(6)(C).

74.     Defendants' Responses evidence a material reversal in Defendants' long-held legal interpretation and application of 5 U.S.C. § 552 (b)(6) and (b)(7)(C) for years prior to February 2017, during which period of time USDA never omitted the Redacted Dealer Information or the Redacted Exhibitor Information pursuant to these FOIA exemptions when publicly releasing this information.

75.     As represented by APHIS in its FOIA responses and its response to appeal #2018-APHIS-00187-A, Defendants intend to adhere to their new interpretation of the FOIA exemptions and their new approach of redacting this Inspection Information in all cases moving forward.

76.     Defendants have failed to explain why they arbitrarily changed course in their legal interpretation and administration of FOIA (by redacting information that they routinely and consistently released to the public and HSUS for over a decade), and failed to explain why they are treating facilities they consider "individuals/homestead businesses" differently from those they consider "non-residential businesses," in violation of the APA. *Id.* § 706(2)(A).

### Relief Requested

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Declare that Defendants wrongfully withheld requested agency records and information;

B.     Declare that Defendants' withholding of the Redacted Dealer Information is unlawful under FOIA;

C.     Declare that Defendants' withholding of the Redacted Exhibitor Information is unlawful under FOIA;

D.     Declare that Defendants' withholding of segregable portions of Redacted Exhibitor Information is unlawful under FOIA;

E.     Declare that Defendants failed to meaningfully notify Plaintiff of the reasons for their withholdings, since Defendants' withholdings were internally inconsistent and inadequately explained, in violation of FOIA;

F.     Declare that Defendants' decision to establish a policy of withholding inspection records without adequate explanation must be set aside as arbitrary and capricious under the APA;

G.     Order Defendants to make the requested records available within seven working days;

H.     Award Plaintiff its cost and reasonable attorney's fees, pursuant to 5 U.S.C. § 552(a)(4)(E)(i);

I.     Maintain jurisdiction over this action until Defendants are in compliance with FOIA, and every order of this Court; and

J.     Grant such additional and further relief to which Plaintiff may be entitled.


Respectfully submitted this 21st day of March, 2018.


/s/ Laura Friend
Laura Friend (D.D.C. Bar No. NY0217)
Kimberly D. Ockene (D.C. Bar No. 461191)
Laura Jean Fox (D.C. Bar No. Unassigned;
VSB No. 85558), *D.D.C. admission pending*
The Humane Society of the United States
1255 23rd Street, NW, Suite 450
Washington, DC 20037
lfriend@humanesociety.org
Phone: (202) 676-2331
Fax: (202) 778-6134


*Attorneys for Plaintiff*