**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES,<br><br>  *Plaintiff*,<br><br>     v.<br><br>THE ANIMAL AND PLANT HEALTH INSPECTION SERVICE, et al.<br><br>  *Defendants*. | Civil Action No. 18-0646 (TNM) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

ARGUMENT……………….……..……………………………………………………...1

I.    There is a Strong Privacy Interest in the Withheld
Information………………..………………………………………….....1

    A.  The Licensees' Business Activities Do Not Render
Exemptions 6 and 7(c) Inapplicable………………………………1

    B.  The Public Domain Exception Does Not Apply…………………..5

    C.  Licensees Will Likely Suffer Harassment if the Withheld
Materials Are Disclosed………………………………………...7

II.    Plaintiff Has Not Demonstrated a Significant Public Interest in
Disclosure……..……………………………………………………….11

    A.  The Only Relevant Public Interest is Shedding Light on the
Government's Performance of Its Statutory Duties………………11

    B.  Plaintiff has Not Shown How the Release of These Records
Would Reveal Meaningful Information About the Government,
as Opposed to the Licensees………………………………………12

    C.  Plaintiff Has Not Shown That Release of Records Pertaining to
Three Particular Licensees Would Reflect Information About
the Government Generally…………………………………………..14

    D.  Plaintiff's Asserted Public Interest Is Satisfied by Already-Public
Information……………………………………………………..…16

    E.  Any Conceivable Public Interest is Outweighed by the  Privacy
Interests at Stake………………………………………………..…22

III.    The Records At Issue Were Compiled for Law Enforcement
Purposes…………………………………………………………..…...24

IV.    Defendant Released All Reasonably Segregable Information……….…26

CONCLUSION……………..………………………………………...…………....30

## TABLE OF AUTHORITIES

### Cases

Adionser v. DOJ,
    811 F. Supp. 2d 284 (D.D.C. 2011) ......................................................................... 27

*American Farm Bureau Federation v. U.S. EPA,
    836 F.3d 963 (8th Cir 2016) ............................................................................... 1, 3, 7

Associated Press v. U.S. Dep't of Justice,
    549 F.3d 62 (D.D.C. 2016) ...................................................................................... 12

Bartko v. U.S. DOJ,
    128 F. Supp. 3d 62 (D.D.C. 2015) ........................................................................... 29

Berger v. IRS,
    487 F. Supp. 2d 482 (D.N.J. 2007) .......................................................................... 15

Blackwell v. FBI,
    680 F. Supp. 2d 79 (D.D.C. 2010) ........................................................................... 27

Boyd v. Crim. Div. of the U.S. Dep't of Justice,
    475 F.3d 381 (D.C. Cir. 2007) ................................................................................ 15

Calderon v. USDA,
    236 F. Supp. 3d 96 (D.D.C. 2017) ............................................................................. 7

City of Ontario v. Quon,
    560 U.S. 746 (2010) ............................................................................................... 4, 5

Consumers' Checkbook, Center for the Study of Servs. v. United States HHS,
    554 F.3d 1046 (D.C. Cir. 2009) .............................................................................. 2, 4

Cotton v. Adams,
    798 F. Supp. 22 (D.D.C. 1992) ................................................................................ 15

DiBacco v. United States Dep't of the Army,
    983 F. Supp. 2d 44 (D.D.C. 2013) ........................................................................... 27

Dillon v. DOJ,
    102 F. Supp. 3d 272 (D.D.C. 2015) ..................................................................... 26-27

DOD v. FLRA,
    964 F.2d 26 (D.C. Cir. 1992) ................................................................................... 16

*Envtl. Prot. Servs. v. U.S. EPA*,
  364 F. Supp. 2d 575 (N.D.W.Va. 2005) ................................................................ 26

*Forest Guardians v. FEMA*,
  410 F.3d 1214 (10th Cir. 2005) ............................................................................ 16

*Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv.*,
  524 F.3d 1021 (9th Cir. 2008) .............................................................................. 16

*Heckler v. Cmty. Health Servs. of Crawford Cnty.*,
  467 U.S. 51 (1984) ................................................................................................. 11

*Hopkins v. U.S. Dep't of Hous. & Urban Dev.*,
  929 F.2d 81 (2d Cir. 1991) .................................................................................... 11

*Horowitz v. Peace Corps*,
  428 F.3d 271 (D.C. Cir. 2005) ................................................................................ 7

*Hunt v. FBI*,
  972 F.2d 286 (9th Cir. 1992) ................................................................................. 15

*Island Film, S.A. v. Dep't of the Treasury*,
  869 F. Supp. 2d 123 (D.D.C. June 26, 2012) .......................................................... 8

*Jefferson v. DOJ*,
  284 F.3d 172 (D.C. Cir. 2002) .............................................................................. 25

*Judicial Watch, Inc. v. Dep't of the Army*,
  402 F. Supp. 2d 241 (D.D.C. 2005) ........................................................................ 8

*Judicial Watch, Inc. v. DOJ*,
  365 F.3d 1108 (D.C. Cir. 2004) .............................................................................. 5

*Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*,
  876 F.3d 346 (D.C. Cir. 2017) .............................................................................. 18

*Jurewicz v. U.S. Dep't of Agric.*,
  741 F.3d 1326 (D.C. Cir. 2014) ...................................................................... 11, 14

*Lepelletier v. Fed. Deposit Ins. Corp.*,
  164 F.3d 37 (D.C. Cir. 1999) .................................................................................. 8

*Mead Data Ctr., Inc. v. Dep't of the Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) .............................................................................. 29

*Mingo Logan Coal Co. v. U.S. EPA*,
  70 F. Supp. 3d 151 (D.D.C. 2014) ........................................................................ 11

*Multi AG Media LLC v. Department of Agriculture,*
    515 F.3d 1224 (D.C. Cir. 2008) ............................................................... 1, 4, 11, 22

*Nat'l Archives & Records Admin. v. Favish,*
    541 U.S. 157 (2004) ........................................................................................ 12

*Nat'l Ass'n of Home Builders v. Norton,*
    309 F.3d 26 (D.C. Cir. 2002) ....................................................................... 8, 24

*Nat'l Ass'n of Retired Fed. Emps. v. Horner,*
    879 F.2d 873 (D.C. Cir. 1989) ................................................................. 8, 20, 22

*News-Press v. U.S. Dep't of Homeland Security,*
    489 F.3d 1173 (11th Cir. 2007) ..................................................................... 23

*Office of the Capital Collateral Counsel v. DOJ,*
    331 F.3d 799 (11th Cir. 2003) ...................................................................... 16

*Oguaju v. United States,*
    288 F.3d 448 (D.C. Cir. 2002) ...................................................................... 15

*Painting & Drywall Work Preservation Fund v. Department of Housing & Urban Development,*
    936 F.2d 1300 (D.C. Cir. 1991) ..................................................................... 23

*Patino-Restrepo v. Department of Justice,*
    246 F. Supp. 3d 233 (D.D.C. 2017) ............................................................... 27

*People for the Ethical Treatment of Animals v. NIH,*
    853 F. Supp. 2d 156 (D.D.C. Apr. 10, 2012) ................................................ 14

*Pratt v. Webster,*
    673 F.2d 408 (D.C. Cir. 1982) ...................................................................... 25

*Providence Journal Co. v. FBI,*
    460 F. Supp. 778 (D.R.I. 1978) ....................................................................... 3

*Riverkeeper v. FERC,*
    650 F. Supp. 2d 1121 (D. Or. 2009) .............................................................. 24

*Roth v. Dep't of Justice,*
    642 F.3d 1161 (D.C. Cir. 2011) ..................................................................... 12

*Rural Housing All. v. U.S. Dep't of Agric.,*
    498 F.2d 73 (D.C. Cir. 1974) ........................................................................ 25

*Schoenman v. FBI,*
    573 F. Supp. 2d 119 (D.D.C. 2008) ............................................................... 26

*Sherman v. U.S. Dep't of Army*,
  244 F.3d 357 (5th Cir. 2001) ........................................................................ 6

*Showing Animals Respect and Kindness v. U.S. Department of Interior*,
  730 F.Supp.2d 180 (D.D.C. 2010) ................................................................ 6

*Sims v. CIA*,
  642 F.2d 562 (D.C. Cir. 1980) ...................................................................... 4

*Sun-Sentinel Co. v. United States Dep't of Homeland Sec.*,
  431 F. Supp. 2d 1258 (S.D. Fla. 2006) ........................................................ 23

*Touarsi v. United States DOJ*,
  78 F. Supp. 3d 332 (D.D.C. 2015) .............................................................. 26

*\*U.S. Dep't of State v. Ray*,
  502 U.S. 164 (1991) .................................................................. 12, 17, 20, 21

*U.S. DOJ v. Reporters Committee for Freedom of the Press*,
  489 U.S. 749 (1989) ............................................................................ 6, 11, 12

*United States v. Jones*,
  565 U.S. 400 (2012) ...................................................................................... 4

*Washington Post Company v. United States Department of Agriculture*,
  943 F. Supp. 31 (D.D.C. 1996) ...................................................................... 3

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ...................................................................... 5

## **Statutes**

7 U.S.C. § 2146 ............................................................................................ 18

7 U.S.C. § 2149 ............................................................................................ 25

**ARGUMENT**

Defendants Animal and Plant Health Inspection Service ("APHIS") and United States Department of Agriculture ("USDA"), respectfully submit this reply in support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion. As discussed below, Plaintiff's Opposition fails to rebut the showing made in Defendants' motion that Defendants fully complied with the FOIA. Accordingly, the Court should enter judgment in Defendants' favor and deny Plaintiff's Cross-Motion.

**I.   There is a Strong Privacy Interest in the Withheld Information**

**A.   The Licensees' Business Activities Do Not Render Exemptions 6 and 7(c) Inapplicable**

Plaintiff opens with a broad challenge to Defendants' ability to withhold under Exemptions 6 or 7(c) *any* information relating to licensees. According to Plaintiff, individuals who are licensees lack a cognizable privacy interest simply because they "have chosen to conduct a federally regulated business activity out of their residence." Opp'n at 12. Plaintiff's view, however, is contrary to the law of this Circuit. It is well-established that "[a]lthough Exemption 6 'has not been extended to protect the privacy interests of businesses or corporations,'" personal information contained in business records "may well qualify for protection under Exemption 6." *Multi AG Media LLC v. Department of Agriculture*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). And courts reject "an overly technical distinction," such as that drawn by Plaintiff here, "between individuals acting in a purely private capacity and those acting in an entrepreneurial capacity." *American Farm Bureau Federation v. U.S. EPA*, 836 F.3d 963, 970 (8th Cir 2016).

For example, in *Multi AG*, the USDA withheld under Exemption 6 information collected from farmers about their farming operations. *Id*. at 1226-27. Though the D.C. Circuit ultimately

ordered the information disclosed, it emphasized that the "business records . . . are covered by Exemption 6." *Id*. at 1228. "Exemption 6 was not limited 'to a narrow class of files containing only a discrete kind of personal information,' but was 'intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" *Id*. The D.C. Circuit reasoned that "[w]ere [it] to deem an individual's financial information unprotected by Exemption 6 simply because it is found in a business record, a cardinal purpose of Exemption 6 would not be served." *Id*. Accordingly, "Exemption 6 applies to financial information in business records when the business is individually owned or closely held, and the records would necessarily reveal at least a portion of the owner's personal finances." *Id*. at 1228-29 (internal quotation marks omitted). The D.C. Circuit reaffirmed the *Multi AG* holding a year later in *Consumers' Checkbook, Center for the Study of Servs. v. United States HHS*, 554 F.3d 1046 (D.C. Cir. 2009), rejecting the plaintiff's argument "that a physician does not have a privacy interest in Medicare payments because the payments relate to business activities and not personal finances." *Id*. at 1051.

The same reasoning applies here. All of the withholdings at issue pertain to licensees who reside at the site of the business, and there is minimal distinction between the businesses and the individuals who own and operate these businesses. Supplemental Declaration of Tonya G. Woods ("Suppl. Woods Decl.") ¶ 16.[1] The fact that the individuals happen to be engaged in business does not eliminate their privacy interests, as courts routinely hold in similar situations. For example, in *American Farm Bureau*, the Eighth Circuit ruled that Exemption 6 protected against disclosure of personal information about owners of concentrated animal feeding

---

[1] Defendants have withdrawn most of its redactions in the records relating to Little Puppies Online, which Defendants determined is not a homestead business, and produced a new set of those records to Plaintiff on December 11, 2018. *See* Suppl. Woods Decl. ¶ 15.

operations, even though the information sought related to actions taken in a business capacity. 836 F.3d at 970-71.  The fact that the disclosure would invade the privacy of the owners, some of whom resided on the site of their businesses, was sufficient to invoke the protections of Exemption 6.  *Id*.  Other decisions are in accord.  *See, e.g.*, *Beard v. Espy*, No. 94-16748, 1995 U.S. App. LEXIS 38269, at *3 (9th Cir. Dec. 11, 1995) (Exemption 6 protected information about small company where disclosure would affect the privacy interests of the individuals); *Providence Journal Co. v. FBI*, 460 F. Supp. 778, 785 (D.R.I. 1978) ("While corporations have no privacy, personal financial information is protected, including information about small businesses when the individual and corporation are identical.") *rev'd on other grounds*, 602 F.2d 1010 (1st Cir. 1979).[2]

None of the decisions cited by Plaintiff are to the contrary.  For example, the court in *Washington Post Company v. United States Department of Agriculture*, 943 F. Supp. 31 (D.D.C. 1996), did not suggest that Exemption 6 was inapplicable *per se* to the cotton subsidy recipients in that case.   Instead, disclosure was required only because there was no basis to conclude that release of the "relatively generic information" could lead to unwarranted invasions of privacy. *Id*. at 34.  The idea that the cotton subsidy recipients "would be overwhelmed by mailings or solicitations" was "implausible" where the recipients were already well equipped to handle such solicitations.  *Id*. at 35.  Here, in contrast, there is a strong basis to expect that the individuals to

---

Defendants have withdrawn most of its redactions in the records relating to Little Puppies Online, which Defendants determined is not a homestead business, and produced a new set of those records to Plaintiff on December 11, 2018.  *See* Suppl. Woods Decl. ¶ 15.

uals in the way that the reports at issue in this case do, only the signature of the inspector and the signature and title of the receiving official are redacted.  *Id*. ¶ 15.  In other words, Defendants appropriately redact information when necessary to protect the privacy interests of individuals and regularly release information pertaining to non-residential business entities.

whom the withheld information pertains would be subject to harassment and other unwarranted invasions of privacy were the withheld information released.  *See infra* Section I(C).

Likewise, *Sims v. CIA*, 642 F.2d 562 (D.C. Cir. 1980), another case cited by Plaintiff, simply recognizes that Exemption 6 was not developed to protect "business judgements and relationships."  *Id*. at 575.  That decision does not hold that information relating to a closely-held or homestead business necessarily falls outside the reach of Exemption 6 (or Exemption 7(c)). Indeed, any such reading of *Sims* is foreclosed by more recent D.C. Circuit decisions, cited above, holding otherwise.  *See Multi AG*, 515 F.3d at 1228; *Consumers' Checkbook*, 554 F.3d at 1051.

Also, contrary to Plaintiff's contention, Defendants' position in this case is in no way inconsistent with positions taken by the government in *Jurewicz v. USDA*, No. 12-5331 (D.C. Cir.).  *See* Opp'n at 12-13.  On the contrary, there the government acknowledged that Exemption 6 could apply to the individuals who were USDA-licensees but determined that the specific information sought in that case would reveal little about the licensees' personal finances.  *See Jurewicz*, 2013 WL 4517953, at *11-12 (D.C. Cir Aug. 26, 2013).

Plaintiff does not advance its position by citing decisions in the Fourth Amendment context to argue that licensees "have no expectation of privacy in their business address and regulated business activities."  Opp'n at 15-16.  Plaintiff's analogy is inapt.  A reasonable expectation of privacy under the Fourth Amendment relates to one's expectation of privacy vis-à-vis the *government*.  *See United States v. Jones*, 565 U.S. 400, 406 (2012) (a Fourth Amendment "violation occurs when *government* officers violate a person's 'reasonable expectation of privacy'") (emphasis added); *City of Ontario v. Quon*, 560 U.S. 746, 755-56 (2010) ("The [Fourth] Amendment guarantees the privacy, dignity, and security of persons

against certain arbitrary and invasive acts by officers of the *Government*") (emphasis added).   A much different question is whether a person has a right to expect privacy vis-à-vis the general public.   In other words, the mere fact that a person might expect to be subject to search by the government does not suggest that the person should expect that information collected through that search will be disseminated publicly through FOIA or otherwise.

For example, a government employee might not have a reasonable expectation of privacy – for Fourth Amendment purposes – as to emails sent on his or her work email account, *see Quon*, 560 U.S. at 756, but personal information in government emails is routinely withheld from release under the FOIA.   A federal employee would certainly expect, and reasonably so, that his or her employer would withhold under Exemption 6 an email to his or her supervisor requesting medical leave and describing a private health issue.   Accordingly, the Court should not endorse Plaintiff's attempt to analogize to inapplicable Fourth Amendment decisions.   *See Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1126 (D.C. Cir. 2004) (affirming the application of Exemption 6 to pardon applications despite Fourth Amendment decisions holding that prison inmates have no reasonable expectation of privacy).

## B.  The Public Domain Exception Does Not Apply

Plaintiff argues that the privacy concerns identified by Defendants are undermined because APHIS previously posted unredacted copies of inspection records online.  Opp'n at 16-17.   To successfully invoke the public-domain exception to the FOIA, however, a requester has the burden of "pointing to specific information in the public domain that appears to duplicate that being withheld." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007).  Plaintiff has not even come close to making this showing.  Plaintiff argues only that "it is *likely* that some of the exact records at issue in this case were previously available" or, alternatively, that Defendants

previously released the same "*types* of records." Opp'n at 17 (first emphasis added). Indeed, Plaintiff would be hard-pressed to meet its burden because its case rests on the claim that the previously-posted records are no longer freely available. *See* Compl. ¶ 51; *see U.S. DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 764 (1989) (stating that if the information sought "were 'freely available,' there would be no reason to invoke the FOIA to obtain access").

To the extent that Plaintiff may be arguing that Defendants have waived individuals' privacy rights for previously-posted materials, Plaintiff is incorrect. Contrary to Plaintiff's suggestion, "[i]ndividuals have a privacy interest even as to information that has been previously disclosed publicly." *Showing Animals Respect and Kindness v. U.S. Department of Interior*, 730 F.Supp.2d 180, 197 (D.D.C. 2010); *see also, e.g., Sherman v. U.S. Dep't of Army*, 244 F.3d 357, 364 & n.12 (5th Cir. 2001) (emphasizing that agency cannot waive individual privacy rights under FOIA, which may only be waived by individual whose informational privacy interests are protected).

Nor has Plaintiff shown that the licensees themselves waived their privacy rights. Although Plaintiff insists that "many licensees openly share certain information," Opp'n at 17, only the three licensees to whom the requested records pertain are at issue in this case. Accordingly, the behavior of "many licensees" generally is not relevant to Plaintiff's claims here. To be sure, Plaintiff also cites contact information on a website relating to one of the licensees at issue here. Opp'n at 18 (discussing Natural Bridge Zoo). Even assuming that the contact information on the website is the same as the information withheld by Defendants (which Plaintiff has not established), courts recognize that "[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that

information may be available to the public in some form." *American Farm*, 836 F.3d at 971.

"Although [Plaintiff] might be able to find [some of] the information [it] seeks on a website,"

disclosure by Defendants would "substantially increase[] the public visibility and accessibility of

that information." *Id.* at 972. "The agency's release of the complete set of data on a silver

platter, so to speak, eliminates the need for requesters and others to scour different websites and

to pursue public records requests to create a comprehensive database of their own." *Id.* Notably,

information may remain protected even where it was previously disclosed by the individual

whose privacy interests are at stake. *See Horowitz v. Peace Corps*, 428 F.3d 271, 280 (D.C. Cir.

2005) ("Even though the student did reveal his allegation to two Peace Corps workers . . . he still

has an interest in avoiding further dissemination of his identity.").

Next, Plaintiff argues that the public nature of exhibition facilities should limit their

owner's privacy interests. Opp'n at 18-19. Although it is true that the public can observe some

of the conditions at an exhibition facility, APHIS inspectors have access to areas that the general

public does not and examine documents that the public never sees. *See* 9 C.F.R. § 2.126(a)-(b)

(describing access provided to inspectors). Moreover, inspection reports are not simply a

collection of observations but rather they include professional opinions, among other

information, which goes beyond what the public may observe. First Woods Decl. ¶ 10.[3]

### C. Licensees Will Likely Suffer Harassment if the Withheld Materials Are Disclosed

Contrary to Plaintiff's arguments, there are indeed substantial, non-speculative privacy

interests at stake in this case. *See* Opp'n at 20-22. In this Circuit, there is no question that "[t]he

---

[3] Plaintiff (at 19) cites the conclusion in *Calderon v. USDA*, 236 F. Supp. 3d 96, 120 (D.D.C. 2017), that there was no significant privacy interest in names or business addresses but omits the remainder of the quoted sentence, which found a privacy interest in other contact information – "business email addresses and business phone numbers" because of "harassment concerns."

privacy interest of an individual in avoiding the unlimited disclosure of his or her name and [home] address is significant." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989); *see also Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2002) ("the Supreme Court has evinced a reluctance in the FOIA context 'to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions'").  Also, Plaintiff does not dispute that avoiding harassment and unwanted intrusions is a cognizable privacy interest under the FOIA.  Indeed, D.C. Circuit precedent holds firmly that a disclosure of information may "invade someone's privacy" for purposes of Exemption 6 if it "invites unwanted intrusions."  *Horner*, 879 F.2d at 878.  In *Horner*, "mailings and personnel solicitations" were sufficiently intrusive to give rise to a substantial privacy interest.  *Id.* at 876. Likewise, there is a recognized privacy interest in avoiding "public scrutiny [and] harassing phone calls to elicit sensitive information."  *Island Film, S.A. v. Dep't of the Treasury*, 869 F. Supp. 2d 123, 136 (D.D.C. June 26, 2012); *see also Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) (the D.C. Circuit "has been particularly concerned when the information [for which Exemption 6 has been asserted] may be used for solicitation purposes"); *American Farm*, 836 F.3d at 971 (protecting addresses and other identifying information about owners of concentrated animal feeding operations due to the risk of harassment); *Judicial Watch, Inc. v. Dep't of the Army*, 402 F. Supp. 2d 241, 251 (D.D.C. 2005) (finding information properly withheld pursuant to Exemption 6 where it was likely that the records would be published on the Internet and that reporters would seek out the individuals mentioned therein for further information, and stating "[t]his contact is the very type of privacy invasion that Exemption 6 is designed to prevent").  Accordingly, there can be no serious dispute that, in this Circuit, concerns about unwanted intrusions create a substantial privacy interest under Exemptions 6 and 7(c).

Defendants previously explained that there is a significant concern about harassment and unwanted intrusions in this case.  *See* First Woods Decl. ¶¶ 49-51.  Plaintiff insists that Defendants' concerns are speculative.  Opp'n at 20-22.  On the contrary, they are well-grounded in reports from licensees describing harassment to which they have been subjected by animal rights groups and their supporters.  The Supplemental Woods Declaration explains that APHIS is aware of numerous such reports from licensees.  For example, licensees described instances of harassment such as strangers taking photos or video of their facilities and publishing them online.  Suppl. Woods Decl. ¶ 5.  Some licensees felt physically intimidated by individuals who oppose their business, especially licensees who live near their facilities.  *Id*.  Another licensee complained that "our phone number is unlisted due to being a victim of harassment via 100's of harassing phone calls and bodily harm threats from an HSUS supporter, when they released a previous number they obtained."  *Id*. ¶ 6.

Another licensee reported that an animal rights group had "taken pictures of our vehicles in the past and put them on web sites disclosing our license plate numbers and referring to us as 'puppy mill haulers' and more.  Inviting mobs of picketers to locations of our customers while deliveries are made."  *Id*. ¶ 7.  The licensee also reported that "a delivery was being made to a customer in New York where animal rights activists were awaiting our truck.  They were filming the delivery while screaming obscenities at our drivers."  *Id*.  Yet another complained that "we are being victimized and harassed by the animal rights organization" and that "they have made threats to do harm to myself and animals."  *Id*. ¶ 8.  According to another licensee, "I have been victimized and subject to online bullying, threats, stalking and harassment" and letters were written "to my employers in an attempt to damage my family reputation . . . and have pressured our sponsor to drop our contract. With the constant bullying, threats and harassment I fear for the

safety of my family and my bears."  *Id.* ¶ 11.  Still others reported conduct such as animal rights groups trespassing at their home and publishing names and addresses on-line.  *Id.* ¶¶ 10-11.  As these accounts demonstrate, Defendants' concerns about the potential for harassment are credible and non-speculative.[4]

Plaintiff further contends that "Defendants have not linked any alleged activity to the release of any of the licensees' information."  Opp'n at 21.  Plaintiff appears to believe that harassment of licensees is only relevant if it occurred due to the release of an inspection report, *id.* at 21-22, but Plaintiff is mistaken.  The fact that many licensees have reported harassment from animal rights groups supports Defendants' belief that the licensees at issue here would be harassed – at their homes – if the withheld information were released.  Inspection reports contain sensitive information such as "whether or not the inspector found any deficiencies during the inspection" and "the nature of any deficiencies."  Opp'n at 6.  If such information were released along with the home addresses for these facilities, animal rights groups are likely to take similar action against these licensees as they have taken against the other licensees who already have been harassed.  Indeed, the risk of harassment is present even if just the addresses are released, because Plaintiff already believes that these licensees have "histories of repeat and serious animal care deficiencies."  Opp'n at 26.

Lastly, the government did not take a contrary position in *Jurewicz*, as Plaintiff repeatedly contends.  Opp'n at 19, 22.  The information at issue in that case was different than

---

[4] In its campaign against puppy mills, Plaintiff itself has encouraged demonstrations against pet stores, *see* An Advocate's Guide to Stopping Puppy Mills, at 12-17 (available at https://www.humanesociety.org/sites/default/files/docs/advocate-guide-stopping-puppy-mills.pdf), and has taken photographs at dog breeding facilities, *see* Missouri's Dirty Dozen, at 2, 6, 7, 9, 10, 12, 14-16 (available at https://www.humanesociety.org/sites/default/files/docs/report-on-mos-dirty-dozen.pdf).

the information at issue here, so the expected consequences from releasing the information were also different.  In *Jurewicz*, the information sought through FOIA included gross income, which provided only limited information about the individual's finances, and the number of animals bought and sold in a given year, which was similar to information already publicly available.  *See Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1332 (D.C. Cir. 2014).  Accordingly, the licensees' concerns about harassment in that case "did not address the specific information at issue, namely the number of dogs bought and sold and the gross revenue from regulated activities, and that 'the licensees' association with the industry' is public knowledge."  *Id*. at 1332-33.  Here, in contrast, Defendants have reasonably concluded that releasing the information sought, including addresses and the details of the inspection reports, would likely lead to unwanted intrusions.[5]

## II.  Plaintiff Has Not Demonstrated a Significant Public Interest in Disclosure

### A.  The Only Relevant Public Interest is Shedding Light on the Government's Performance of Its Statutory Duties

The only relevant public interest in FOIA cases is to "shed[] light on an agency's performance of its statutory duties" and thereby enable citizens to be informed about "what their government is up to."  *Multi Ag Media*, 515 F.3d at 1231.  Thus, information that does not reveal the behavior of federal government employees or agencies "falls outside the ambit of the public interest that the FOIA was enacted to serve."  *Reporters Comm.*, 489 U.S. at 774-75; *see also Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 88 (2d Cir. 1991) (explaining that

---

[5] Plaintiff's suggestion that Defendants are judicially estopped from defending the withholdings in this case is meritless.  Opp'n at 19 & n.4.  As discussed above, Defendants' position is not inconsistent with its position in *Jurewicz* and the two cases involve entirely different records with different public and private interests at stake.  In any event, it is "well settled that the Government may not be estopped on the same terms as any other litigant."  *Mingo Logan Coal Co. v. U.S. EPA*, 70 F. Supp. 3d 151, 174 (D.D.C. 2014) (citing *Heckler v. Cmty. Health Servs. of Crawford Cnty.*, 467 U.S. 51, 60 (1984)).

disclosure of personal information having an "attenuated" relationship to government activity is insufficient to overcome FOIA privacy exemptions). There must be a sufficient "nexus between the requested information and the asserted public interest that would be advanced by disclosure." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172-73 (2004).  The burden of establishing that disclosure would serve the public interest is on the requester, *see Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 66 (D.D.C. 2016), and "[m]ere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 178-79 (1991).

Here, Plaintiff has asserted a "public interest in monitoring APHIS's implementation of and adherence to the AWA[.]"  Opp'n at 23.  The flaw in Plaintiff's argument, however, is that Plaintiff has not shown how release of the requested records would meaningfully advance that public interest.  *See Roth v. Dep't of Justice*, 642 F.3d 1161, 1174-75 (D.C. Cir. 2011) (requester has the burden to show "that the information he seeks 'is likely to advance'" its asserted public interest).  Plaintiff has failed to meet its burden, for the multiple reasons discussed below.

### B. Plaintiff Has Not Shown How the Release of These Records Would Reveal Meaningful Information About the Government, as Opposed to the Licensees

"FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed."  *U.S. DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 774 (1989).  Accordingly, information that does not reveal anything about "the character of a government agency or official" but rather bears only an "attenuated . . . relationship to governmental activity" "does not outweigh individuals' privacy interests in their personal information."  *Hopkins*, 929 F.2d at 88.

Here, Plaintiff is seeking information gathered by the government about private citizens. The inspection records at issue in this case do not reveal anything meaningful about "how USDA implements the AWA" or "whether USDA is properly administering the statute," which are the public interests Plaintiff invokes. Opp'n at 27. For example, Plaintiff would not be able to read an inspection report and determine that APHIS failed to record a deficiency at the inspected facility. Unless Plaintiff was present at the facility on the same date as the inspector and had access to the same areas and documents as the inspector, Plaintiff will not know what deficiencies may or may not have been observable on that day. If an inspection report does not list a particular deficiency, Plaintiff will not know if that is because APHIS failed to record an existing deficiency or because the deficiency did not exist at the time of the inspection. Plaintiff's suggestion that it could compare the inspection reports of Natural Bridge Zoo to its own "undercover investigation" is not plausible. Opp'n at 25. Plaintiff's investigation occurred in 2014, *id.*, and yet this case concerns inspection reports beginning in 2015, so there is no basis to believe that the specific conditions observed by Plaintiff on a particular day in 2014 were still present when APHIS inspected in the years following. In any event, not even Plaintiff contends that it can conduct an investigation of the other licensees at issue in this case, each of whom is a breeder operating out of a private residence.

Plaintiff also makes vague claims about using the reports to determine whether the government "follow[ed] up" on deficiencies mentioned in previous reports. Opp'n at 26. But Plaintiff fails to articulate how these reports would reveal such information. To the extent that a deficiency was identified in a prior report and not identified in a subsequent report, Plaintiff will not know whether APHIS failed to detect the deficiency or whether the deficiency had simply been corrected by the time of the subsequent inspection.

A comparison of this case to *Jurewicz* proves the point.  In that case, there was a public interest in the records at issue (Forms 7003) precisely because "the public could gauge the effectiveness of inspections by comparing data on Form 7003 with publicly available inspection reports."  741 F.3d at 1333; *see also* Opp'n at 32 (emphasizing this aspect of *Jurewicz*).  In contrast to *Jurewicz*, here, Plaintiff has not shown how the information in the inspection reports could be compared to any other information to gauge the effectiveness of inspections or to otherwise reveal anything informative about the government.  Accordingly, Plaintiff has not shown that the withheld information, if disclosed, would reveal information about the operations of the federal government.  *See People for the Ethical Treatment of Animals v. NIH*, 853 F. Supp. 2d 156, 158 (D.D.C. Apr. 10, 2012), affirmed in relevant part, 745 F.3d 545 (D.C. Cir. 2014) (assuming *arguendo* that the Animal Welfare Act and Health Research Extension Acts establish a public interest in knowing "whether those who conduct research on animals are treating them humanely," and finding that disclosure of identities of three named researchers would not serve that interest because information would not reveal anything about the government's own conduct).

### C.  Plaintiff Has Not Shown That Release of Records Pertaining to Three Particular Licensees Would Reflect Information About the Government Generally

Even assuming for purposes of argument that the withheld information pertains to the government, and not just the licensees, Plaintiff has still not established a public interest.  The records at issue relate to only three licensees among the more than 6,600 AWA licensees nationwide.  Suppl. Woods Decl. ¶ 12.  As Plaintiff concedes, these are "records relating to *specific* facilities" and Plaintiff argues that the records would show only "how APHIS chose to perform its inspection duties *with respect to this particular facility*," Opp'n at 25, 26 (emphasis added), not how APHIS conducts its inspection duties *generally*.  The distinction is fatal to

Plaintiff's argument.  Courts routinely hold that the minimal amount of information revealed by one or a few incidents does not shed enough light on an agency's conduct to overcome the subject's privacy interest in his or her records.  For example, in *Oguaju v. United States*, 288 F.3d 448 (D.C. Cir. 2002), the plaintiff sought access to records that he contended would show prosecutorial misconduct in his criminal case.  The D.C. Circuit rejected his claim because "even if the records Oguaju seeks would reveal wrongdoing in his case, exposing a single, garden-variety act of misconduct would not serve the FOIA's purpose of showing "what the Government is up to."  *Id*. at 451, *vacated on other grounds*, 541 U.S. 970 (2004), *reaffirmed on remand*, 378 F.3d 1115 (D.C. Cir. 2004); *Boyd v. Crim. Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("a single instance of a *Brady* violation . . . would not suffice to show a pattern of government wrongdoing as could overcome the significant privacy interest at stake").  Likewise, the court in *Hunt v. FBI*, 972 F.2d 286 (9th Cir. 1992), acknowledged that disclosure of the details of an investigation into the conduct of a particular FBI agent "could reveal whether this particular investigation was properly conducted," but emphasized that the requested disclosure was focused "on one isolated investigation."  *Id*. at 288-89.  The file sought would "not shed any light on whether all such FBI investigations are comprehensive" and therefore would not advance a relevant public interest.  *Id*. at 289.

Accordingly, "[i]t is difficult to imagine how the public could discern a great deal about the [USDA's] discharge of its duties through an evaluation of . . . reports pertaining only to" three licensees.  *Cotton v. Adams*, 798 F. Supp. 22, 26 n.9 (D.D.C. 1992); *Berger v. IRS*, 487 F. Supp. 2d 482, 505 (D.N.J. 2007) (finding that disclosure of one IRS employee's time sheets would not serve the public interest because they would not meaningfully reflect on the agency more generally).

### D.  Plaintiff's Asserted Public Interest Is Satisfied by Already-Public Information

Plaintiff's assertion that release of the withheld records would advance the public interest is further undermined because there is already extensive publicly available information concerning APHIS's inspection activities.  Specifically, all final AWA inspection reports for the past three years are available online for public access, all of which have the substantive inspection information unredacted.  First Woods Decl. ¶¶ 14, 17.[6]  The USDA also publishes various reports about its AWA inspections and enforcement activities.  Suppl. Woods Decl. ¶ 28. It is appropriate, when assessing the public interest side of the balancing equation, to consider "the extent to which there are alternative sources of information available that could serve the public interest in disclosure."  *DOD v. FLRA*, 964 F.2d 26, 29-30 (D.C. Cir. 1992); *Forest Guardians v. FEMA*, 410 F.3d 1214, 1219 & n.3 (10th Cir. 2005) (finding no public interest in a request to FEMA for "electronic map files" showing the locations of federally insured structures, because the electronic files were "merely cumulative of the information" that agency already had released in "hard copies" of the maps and because the requester already had a "plethora of information" with which "to evaluate FEMA's activities"); *Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1028 (9th Cir. 2008) ("As a result of the substantial information already in the public domain, we must conclude that the release of the identities of the employees who participated in the Forest Service's response to the Cramer Fire would not appreciably further the public's important interest in monitoring the agency's performance during that tragic event."); *Office of the Capital Collateral Counsel v. DOJ*, 331 F.3d 799, 804 (11th Cir. 2003) (finding that there is substantial public information available about AUSA's

---

[6] Reports pertaining to non-residential businesses have very minimal redactions.  *Id.* ¶ 15.  In reports pertaining to individuals or homestead businesses, identifying information is redacted. *Id.* ¶ 16.

misconduct and that therefore any "public interest in knowing how DOJ responded to [AUSA's] misconduct can be satisfied by this other public information").

In other words, the relevant question here is whether, given the extensive information that is already available to the public, the possible incremental benefit from the release of the withheld information outweighs the privacy interests at stake. *See Ray*, 502 U.S. at 178 (finding the public interest in disclosure to have been satisfied by redacted documents that had already been released). Plaintiff has not shown that any incremental release of information about APHIS inspections, beyond that already publicly known, would reveal significant information the operations and activities of the federal government.

Plaintiff insists that the publicly-available records are insufficient to satisfy its needs, claiming that various pieces of information cannot be known "[w]ithout linking an inspection report to a particular facility." Opp'n at 24-25. Plaintiff's argument, however, goes far beyond the particular records at issue here and, instead, essentially makes a broad challenge to Defendants' decision not to post unredacted inspection records online.[7] For example, Plaintiff argues that the publicly-available records do not allow it to discern "whether APHIS has *ever* inspected a specific facility, or has gone years without inspecting a facility." *Id*. at 24 (emphasis in original). That argument has no relevance to this case, because Plaintiff already knows, by virtue of the records released in this case, that the particular facilities at issue were inspected and in which years they were inspected. This is because the released inspection reports leave the facility and the year of the inspection unredacted. Suppl. Woods Decl. ¶ 18. Likewise, Plaintiff argues that it cannot determine "whether APHIS has conducted the annual inspections that are

---

[7] That decision already has been upheld by another court, *see Animal Legal Def. Fund v. United States Dep't of Agric.*, No. 17-cv-00949, 2017 U.S. Dist. LEXIS 83466 (N.D. Cal. May 31, 2017), and is not at issue in this case.

required for certain types of facilities under the AWA." Opp'n at 24. Plaintiff is referring to research facilities that are required to be inspected on an annual basis. 7 U.S.C. ¶ 2146. But none of the facilities at issue here are research facilities, so Plaintiff's argument is inapplicable to this case. Suppl. Woods Decl. ¶ 25. Again, Plaintiff has failed to confine its arguments to what the *particular records at issue here* would reveal if they were released. *See Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 876 F.3d 346, 351 (D.C. Cir. 2017) ("a party seeking disclosure of investigative materials must still 'adequately support[] its 'public interest' claim with respect to the *specific* information being withheld." (emphasis in original)). As Plaintiff fails to accept, this is not a case about the adequacy of Defendants' online database, but rather it is a case about specific documents pertaining to three particular licensees.

Plaintiff also contends that without linking an inspection report to a particular facility, it cannot determine "whether and how APHIS is applying the AWA uniformly or disparately across different facilities." Opp'n at 24. But Plaintiff has not shown how records about three specific facilities could possibly reveal anything meaningful about such broad subjects. In any event, the public can already review inspection records online to determine if inspections are consistent across different locations. Suppl. Woods Decl. ¶¶ 19-24. It is not necessary to know the name of each facility to do that. Likewise, the public can already determine "whether and how APHIS is addressing repeat violations across inspection reports for a single facility." Opp'n at 24-25. The online search tool allows the public to view all inspection records over the past three years for a single facility (with identifying information about the facility redacted, in the case of homestead businesses or individuals). Suppl. Woods Decl. ¶ 19. Users can track documented deficiencies over time for a single facility to see whether and how repeat deficiencies are addressed. *Id*. It is not necessary to know the name of the facility in order to do

that.  Likewise, the search tool also allows the public to determine if "APHIS is timely re-inspecting facilities to ensure that deficiencies noted on prior inspection reports are addressed by noted 'correct by' dates" and "whether, in the case or 'no access' . . . USDA ever returned and gained access."  Opp'n at 25.  A user has to simply choose a facility and view the reports associated with that facility.

Plaintiff also claims that the online records do not permit it to determine "whether APHIS conducted an investigation after a complaint was submitted regarding a specific facility or an incident was reported in the press," Opp'n at 25, but AWA inspection records do not typically reveal whether an inspection was conducted in response to a complaint.  Suppl. Woods Decl. ¶ 27.  Also, none of the records at issue are related to the complaint process.  *Id.*  Therefore, the release of the withholdings would not reveal whether APHIS conducted an investigation after a complaint was submitted or an incident was reported.  In any event, information about the results of complaints submitted to APHIS is available through other means.  *Id.*

Plaintiff also tries to imply a public interest in the records sought by arguing that "Plaintiff has used the necessary link between individual inspection reports and specific facilities to petition USDA for the revocation of licenses of chronically non-compliant dealers and exhibitors, as well as to petition USDA for regulatory changes to improve animal welfare."  Opp'n at 26-27 (arguing that "[a]ccess to inspection reports, tied to those individual facilities, was critical to drafting these petitions"); *see also* Pl's Statement of Material Facts as to Which There is No Genuine Dispute, ECF No. 20, at Statements 58-59 (claiming that Plaintiff has "submitted petitions for license revocation" based on information found in inspection reports and has used such information "to petition the government for regulatory change").  But Plaintiff's lobbying activities arising from the release of information do not count towards the public

19

interest.  The D.C. Circuit has already rejected an argument that a public interest was shown because disclosure of information would aid a plaintiff "in its lobbying activities, and thus result in the passage of laws that would benefit the public in general[.]"  *Horner*, 879 F.3d at 879.  For purposes of the FOIA, "these considerations are not relevant; they involve not 'what the[] Government is up to,' but only what it might be up to if [Plaintiff] had its druthers."  *Id*.  Plaintiff's argument betrays that what it is really seeking in this case is information about the *licensees*, which Plaintiff will use in its lobbying efforts, not information about the *government*.

Plaintiff further contends that disclosure of certificate and customer identification numbers would allow Plaintiff to track a licensee across multiple facilities. Opp'n at 29-30.  But, as discussed above, Plaintiff has not shown a public interest in the ability to tie inspection reports to a particular licensee.  Moreover, Plaintiff's assertion that the records might show that "two facilities with different certificate numbers have the same address," Opp'n at 30, is entirely speculative.  *See Ray*, 502 U.S. at 179 ("[M]ere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy."); *Robbins v. U.S. HHS*, 1996 U.S. Dist. LEXIS 22754, at *14-16 (N.D. Ga. Aug. 12, 1996) (the possibility that release of names and addresses of rejected social security disability claimants could ultimately reveal the agency's wrongful denial was "too attenuated to outweigh the significant invasion of privacy").

Plaintiff also has not shown that additional information should be released from veterinary records, which are sometimes collected from licensees during inspections.  Opp'n at 30.  Plaintiff's arguments ignore the fact that Defendants released much of the information contained in the veterinary records, including some of the specific information Plaintiff argues should be disclosed.  For example, Plaintiff argues that information about "vaccinations" should be disclosed, but Defendants *did* disclose that information.  Suppl. Woods Decl. ¶ 29 & Ex. 7.

Defendants appropriately withheld portions of the veterinary records when those portions were referred to directly in the inspection reports as noncompliant items. *See, e.g.*, *Vaughn* Index, First Woods Decl., Ex. 16 at 2. Releasing that information would allow Plaintiff to connect the information in the veterinary records with the reports available through the Animal Care Public Search Tool. Plaintiff would learn the identities of the licensees that are currently redacted in the online versions of the reports, effectively creating an unredacted version of the record.

Defendants also withheld from the veterinary records certain personal information about third-party veterinarians. *See, e.g.*, *Vaughn* Index, at 2. Of this information, Plaintiff requests disclosure of the names of the veterinarians. Opp'n at 31. The veterinarians maintain a privacy interest against disclosure of their names, which would likely lead to harassment based on their association with a particular facility. Plaintiff's asserted public interest in evaluating whether APHIS is checking whether veterinarians are licensed would not be advanced by disclosure because licensing information is not contained in the records. In any event, Plaintiff's speculation that some veterinarians might be unlicensed is insufficient to meet Plaintiff's burden. *See Ray*, 502 U.S. at 179 ("[M]ere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy.").

Lastly, Plaintiff attempts to analogize to the District Court's decision in *Jurewicz*, where that court discussed the asserted need to use a dealer name or address to cross-reference information in the released records with the agency database. Opp'n at 31 (citing 891 F. Supp. 2d at 160-61). But that case involved different records, different information, and different asserted public interests. In this case, Plaintiff has not shown that any public interest would be advanced by cross-referencing the records at issue with the information available online, as discussed above.

**E.  Any Conceivable Public Interest is Outweighed by the Privacy Interests at Stake**

Even if the Court were to find some public interest in the disclosure of these records, disclosure still would not be appropriate.  The Court must weigh protection of the privacy interests at stake "against the public interest[, if any,] in the release of the records."  *Multi Ag Media*, 515 F.3d at 1230 (quoting *Horner*, 879 F.2d at 874).  Here, the individuals to whom these records pertain have a strong privacy interest against disclosure of information such as their home addresses and the detailed descriptions of the government's findings concerning their professional activities.  There is a well-supported basis to believe that these individuals will be subjected to harassment by Plaintiff and other similar organizations if the withheld information is released.  Against this strong privacy interest, Plaintiff's asserted public interest falls far short of requiring disclosure.  The information at issue pertains only to three particular licensees and does not reflect "what the Government is up to" generally.  *Oguaju*, 288 F.3d at 451.  Moreover, there is already extensive information about AWA inspections available for public consumption, including the full substance of all inspection reports over the past three years, some in an anonymized version to protect privacy.  The bottom line is that the public interest would not be meaningfully advanced by connecting specific licensees to particular reports, and Plaintiff's efforts to show otherwise fail to address the specific records at issue and, ultimately, fall far short of the mark.

In circumstances similar to these, where plaintiffs argued that disclosure of personal information serves a public interest in monitoring agency compliance with federal statutes, courts have not hesitated to take the side of privacy rights.  For example, in *Painting & Drywall Work Preservation Fund v. Department of Housing & Urban Development*, 936 F.2d 1300 (D.C. Cir. 1991), the plaintiff sought payroll-records relating to three government-assisted construction

projects. *Id*. at 1301. The government withheld personal information, including names and home addresses, that would have allowed the plaintiff to determine the earnings of individual employees. *Id*. Although the plaintiff argued that disclosure was necessary to monitor whether the government was enforcing labor statutes, that interest was outweighed by the privacy interests, especially because there was an alternative way to access the information, namely, by engaging in face-to-face conversations with workers at worksites. *Id*. at 1303. Here, too, the very substantial privacy interests at stake outweigh the asserted public interest, particularly given that the public already has access to extensive information to allow them to monitor Defendants' enforcement of the AWA.

The cases cited by Plaintiff (at 32-33) do not suggest otherwise. In *Sun-Sentinel Co. v. United States Dep't of Homeland Sec.*, 431 F. Supp. 2d 1258 (S.D. Fla. 2006), the court *denied* the plaintiff access to names of individuals who had received relief from FEMA because the names would not provide sufficient information about the operations of FEMA. *Id*. at 1271-72. Although the court ordered disclosure of addresses, the addresses went "to the heart of whether FEMA improperly disbursed funds" and there was no suggestion that the individuals would be subjected to harassment if the addresses were released. *Id*. at 1271. Next, the court in *News-Press v. U.S. Dep't of Homeland Security*, 489 F.3d 1173 (11th Cir. 2007), did "not deny that a privacy interest against disclosure may exist" in that case. *Id*. at 1204 n.33. It merely held that, as to address information sought by the plaintiffs, the privacy interest at stake was outweighed by the public interest in disclosure under the unique facts of that case. *Id*. More importantly, the court affirmed the application of Exemption 6 as it pertained to the names of individuals because of the risk of intrusions by "commercial solicitors, members of the press seeking quotes, and others[.]" *Id*. at 1205. Accordingly, *News-Press* actually supports Defendants' position that

these types of intrusions are substantial and are protected against by Exemption 6 (and Exemption 7(c)).

Next, unlike here, the privacy interest in *Norton* was "relatively weak" because the information at issue merely disclosed "that a pygmy owl has been sighted on an individual's property" but did not otherwise "disclose any information about that individual." 309 F.3d at 36. The Court in *Norton* contrasted that case with *Horner*, where "the requested disclosure would have revealed not only names and addresses but also the additional fact that the individuals on the list were retired or disabled and received assistance from the federal government." *Id*. This case is more like *Horner*, because Plaintiff is seeking the release of addresses in conjunction with sensitive information obtained through the course of a government inspection. Lastly, the information at issue in *Riverkeeper v. FERC*, 650 F. Supp. 2d 1121 (D. Or. 2009), was as benign as the information in *Norton*. The plaintiff sought "mailing lists showing the names and addresses of landowners notified of four public scoping hearings about a proposed 220-mile natural gas pipeline" and the agency had "not identified any harm to the landowners resulting from disclosure." 650 F. Supp. 2d at 1122, 1129.

### III.  The Records At Issue Were Compiled for Law Enforcement Purposes

Contrary to Plaintiff's arguments (at 34-37), the records at issue here were indeed compiled for law enforcement purposes and are therefore subject to Exemption 7. The D.C. Circuit has explained that the standard in "this circuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled" and "whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding," adding that if the activity "is for a possible violation of law, then the inquiry is for law enforcement purposes." *Jefferson v. DOJ*, 284 F.3d 172, 176-77 (D.C. Cir. 2002). "What the Government is

required to show is that the investigatory files were compiled for adjudicative or enforcement purposes." *Rural Housing All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 80 (D.C. Cir. 1974). "If an investigatory file is compiled for the purpose of determining whether a law enforcement proceeding should be brought . . . and against whom, then, whether the agency concludes that proceedings are necessary or not, the agency may utilize exemption 7 to protect its investigatory process and sources." *Rural Housing*, 498 F.2d at 82 n.48.

This standard is met in this case. As explained in the First Woods Declaration, APHIS uses inspections to administer and enforce compliance with the AWA. Woods Decl. ¶ 70. Inspection reports document noncompliant conditions that necessitate investigative and enforcement activities and are important records used during the course of enforcement actions. *Id.* ¶¶ 70-71. Because an inspection is a key part of an inquiry to identify potential violations of the AWA, it can "fairly be characterized as an enforcement proceeding." *Jefferson*, 284 F.3d at 176-77. Inspection reports are "compiled for the purpose of determining whether a law enforcement proceeding should be brought . . . and against whom," and are therefore subject to Exemption 7. *Rural Housing*, 498 F.2d at 82 n.48. The inspections are conducted of particular licensees and they evaluate whether there are any AWA deficiencies. *See Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982). Moreover, the inspections could result in civil or criminal sanctions. 7 U.S.C. § 2149; *see Jefferson*, 284 F.3d at 177.

Plaintiff discusses cases in the context of criminal investigations, presumably in an attempt to suggest that Exemption 7 applies only to criminal law enforcement records. Opp'n at 35. But Plaintiff is incorrect. It is very well-established that Exemption 7 "'covers investigatory files related to enforcement of all kinds of laws,' including those involving 'adjudicative proceedings' and administrative proceedings." *Schoenman v. FBI*, 573 F. Supp. 2d 119, 146

(D.D.C. 2008) (quoting *Jefferson*, 284 F.3d at 178); *see also Envtl. Prot. Servs. v. U.S. EPA*, 364 F. Supp. 2d 575, 588 (N.D.W.Va. 2005) (finding that records compiled in administrative proceeding satisfy law enforcement threshold, because Exemption 7 applies to "enforcement of civil laws, such as regulations"); *McErlean v. U.S. DOJ*, No. 97-7831, 1999 U.S. Dist. LEXIS 15544, at *24-25 (S.D.N.Y. Sep. 30, 1999) (stating that "it is well-settled that documents compiled by the INS in connection with the administrative proceedings authorized by the Immigration and Naturalization Act are documents compiled for 'law enforcement purposes'").

Accordingly, the records at issue here are subject to Exemption 7.

### IV.   Defendant Released All Reasonably Segregable Information

Defendants conducted a meticulous line-by-line review of the records at issue and carefully applied redactions to enable at least a portion of every document to be released.  First Woods Decl. ¶ 75.  Only the videos were withheld in full.  *Id*. ¶ 64.  Nevertheless, Plaintiff remains dissatisfied, insisting that Defendants have failed to establish that they released all reasonably segregable information.  Opp'n at 37-41.

Defendants, however, have met their burden to show that all reasonably segregable information was released.  Defendants submitted a declaration attesting to the relevant facts and filed a detailed *Vaughn* index describing every document at issue and describing in detail the bases for the withholdings.  Courts routinely find segregability obligations satisfied based on similar statements to those presented here.  *See, e.g.*, *Touarsi v. United States DOJ*, 78 F. Supp. 3d 332 (D.D.C. 2015) (noting that "similarly detailed declarations providing that an agency conducted a page-by-page search are regularly accepted in this Circuit."); *Dillon v. DOJ*, 102 F. Supp. 3d 272, 298 (D.D.C. 2015) (concluding that agency had met its obligation where declaration attested that "no pages were withheld in full on the basis of a FOIA exemption and

the remaining responsive pages were released with all reasonably segregable, non-exempt information"); *Blackwell v. FBI*, 680 F. Supp. 2d 79, 96 (D.D.C. 2010) (finding segregability requirement satisfied where the agency's declaration explained that "documents were processed to achieve maximum disclosure" and "further disclosure or attempt to describe information withheld would identify information protected by one of the FOIA exemptions"); *Adionser v. DOJ*, 811 F. Supp. 2d 284, 295 (D.D.C. 2011); *Patino-Restrepo v. Department of Justice*, 246 F. Supp. 3d 233, 250 (D.D.C. 2017).

Defendants are "entitled to a presumption that [they] complied with the obligation to disclose reasonable segregable material." *DiBacco v. United States Dep't of the Army*, 983 F. Supp. 2d 44, 66 (D.D.C. 2013). Plaintiff must therefore "offer . . . evidence to rebut [the agencies'] averment[s]." *Id.* Plaintiff has not done so. Instead, Plaintiff references various entries in Defendants' *Vaughn* index to try to show that additional material could be segregated, but Plaintiff has misunderstood the withholdings in those records. Opp'n at 38. For example, Plaintiff quotes the following partial entry in the *Vaughn* index: "The photos at Bates 000676-677, 000695 and 000700-701 contain images of forms that include the names and signatures of third party veterinarians." Opp'n at 38 (quoting *Vaughn* Index at 14). Plaintiff questions why Defendants redacted the entirety of the photo and photo descriptions on those pages (while leaving other information unredacted). *Id.* Plaintiff appears to assume that Defendant should have only redacted the names and signatures while leaving the remainder of the document unredacted. But even a cursory glance at the *Vaughn* index reveals Plaintiff's mistake. The *Vaughn* index provides *multiple* reasons why those pages contain redactions, and the fact that they contain names and signatures is just one of those reasons. For instance, the index explains that "APHIS redacted the contents of the photo and the photo description" because "[t]he photos

reference noncompliant items." *Vaughn* Index at 14.  Accordingly, the documents contain other exempt material, beyond simply the names and signatures, which prevented the agency from releasing additional information.

The same response applies to Plaintiff's discussion of other records, such as records containing photos of members of the public.  Opp'n at 38 (citing *Vaughn* Index at 19). Defendant could not simply redact the portion of the document showing the image of members of the public, and leave the remainder of the document unredacted.  As the *Vaughn* Index states, "APHIS redacted the contents of the photo and the photo description" because "[t]he photos reference noncompliant items." *Vaughn* Index at 19.  Accordingly, Plaintiff's argument about segregability is based on a misreading of the *Vaughn* Index.  Far from showing any failure to meet their obligations, the pages cited by Plaintiff actually demonstrate that Defendants *did* comply with their duty to segregate.  Instead of withholding these pages in full, Defendants painstakingly applied redactions and released all non-exempt information, including the name of the photographer, the year of the inspection, and the certificate number.  *See* Opp'n, Declaration of Debra L. Leahy, ECF No. 20-1, Ex. M.

Indeed, Plaintiff concedes that Defendants applied narrow and targeted redactions to the records by, for example, "redacting *only* veterinarian signatures" in certain records or withholding only "a small box for an image of an individual" in a photo.  Opp'n at 39.  Plaintiff insists that "Defendants have offered no explanation for why the photographs released at Bates 000704 and 705 did not require the redaction of the contents and description of the photographs whereas all other photographs and facilities *did* require such redaction." *Id*.  Of course, the explanation is provided right in the *Vaughn* Index, which explains the reasons why certain

photos were redacted in full, as discussed above.  The photos at Bates 000704 and 705 do not document noncompliances, as the other photos discussed above do.  *See Vaughn* Index at 15.

Plaintiff's belief that there may be portions of the photos that can be segregated is pure speculation.  "In order to be considered reasonably segregable, the information, if disclosed, must have some meaning."  *Bartko v. U.S. DOJ*, 128 F. Supp. 3d 62, 74 (D.D.C. 2015), *rev'd on other grounds*, 898 F.3d 51 (D.C. Cir. 2018), citing *Mead Data Ctr., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977) ("A court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases or even sentences which taken separately or together have minimal or no information content.").  While, in theory, Defendants could unredact small, meaningless portions of the photos for release to Plaintiff, such portions would have no informational value and are not reasonably segregable.

Lastly, Plaintiff's cited authorities do not undermine Defendant's position.  In *Mead Data*, unlike here, the documents appeared to "contain information which is not exempt." 566 F.2d at 259; *id.* at 260 (explaining that the government's position rested "on overly broad interpretations of the attorney-client and deliberative process privileges").  Moreover, in *Mead*, the documents were withheld in full, *id.* at 248, whereas, here, every record except for the videos was at least partially released.  As to the videos, the First Woods Declaration adequately explains why no information could be segregated and released.  *See* First Woods Decl. ¶ 64 (explaining that, unlike the photographs, the videos do not contain a text overlay or a title page with releasable information such as the year, videographer, licensee name, or number").

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully requests that this Court grant summary judgment in favor of Defendants and deny Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

JESSIE K. LIU, D.C. BAR # 472845
United States Attorney

DANIEL F. VAN HORN, D.C. BAR #924092
Chief, Civil Division

_____/s/_____
JOSHUA KOLSKY, D.C. BAR # 993430
Assistant United States Attorney
District of Columbia
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2541
Fax: (202) 252-2599
joshua.kolsky@usdoj.gov

*Counsel for Defendants*