# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES,<br><br>     *Plaintiff*,<br><br>          v.<br><br>THE ANIMAL AND PLANT HEALTH INSPECTION SERVICE, et al.<br><br>     *Defendants*. | Civil Action No. 18-0646 (TNM) |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT
## OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

Defendants Animal and Plant Health Inspection Service ("APHIS") and United States Department of Agriculture ("USDA"), respectfully submit this response to Plaintiff's Statement of Material Facts as to Which There is No Genuine Dispute, ECF No. 20.

1. Plaintiff the Humane Society of the United States ("HSUS"), established in 1954, is a non-profit organization headquartered in Washington, D.C. HSUS and its corporate affiliates have regional offices and multiple direct animal care facilities (including one licensed as an exhibitor under the Animal Welfare Act, "AWA") located throughout the country, and international offices throughout the world. Declaration of Debra L. Leahy ("Leahy Decl.") ¶ 3; Declaration of John Goodwin ("Goodwin Decl.") ¶ 3.

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.  To the extent a further response is required, Defendants do not dispute the allegations.

2.   HSUS engages in legislative advocacy, public education, regulatory policymaking, and litigation to combat animal abuse and exploitation, and to promote the protection and welfare of all animals. HSUS provides its members, the public, and the press with information on a broad spectrum of animal welfare issues, including the welfare of animals used for commercial breeding, zoological exhibition, biomedical research, and other operations regulated under the AWA (7 U.S.C. §§ 2131-2159). Leahy Decl. ¶ 5; Goodwin Decl. ¶ 5.

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.    To the extent a further response is required, Defendants do not dispute the allegations.

3.   Having timely access to United States Department of Agriculture ("USDA") Animal and Plant Health Inspection Service ("APHIS") inspection records is key to HSUS's ability to perform these functions. Leahy Decl. ¶¶ 6, 8, 14-19, 31; Goodwin Decl. ¶¶ 6, 8, 19, 26-34.

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.    To the extent a further response is required, Defendants dispute the allegations.

4.   APHIS conducts periodic inspections of facilities that are licensed or registered under the AWA. These inspections are performed routinely, whether or not APHIS suspects any wrongdoing by the facility. 7 U.S.C. § 2146; Leahy Decl. ¶ 9; Goodwin Decl. ¶ 9; Declaration of Tonya G. Woods (ECF No. 18-2) ("Woods Decl.") ¶ 8.

**Response**: Undisputed.

5. Inspections are conducted by personnel within APHIS' Animal Care ("AC") division. Woods Decl. ¶ 7.

**Response**: Undisputed.

6. APHIS inspectors produce inspection reports documenting these inspections. Leahy Decl. ¶ 9; Goodwin Decl. ¶ 9; Woods Decl. ¶ 9.

**Response**: Undisputed.

7. Inspection reports include information such as the name of the licensee or registrant, the business name (if different), the type of inspection, the date of inspection, the inspection ID number, the customer ID and certificate number, the name of the particular cite of the inspection (as many licensees and registrants have multiple facilities listed under the same license or registration number). Inspection reports also include whether or not the inspector found any deficiencies during the inspection, the nature of any deficiencies (including citations to the appropriate AWA regulations, a narrative of the deficiency found, and a date by which the facility must correct that deficiency), and the name of the APHIS inspector who prepared the report. An animal inventory is also produced along with an inspection report, which lists the species and corresponding number of animals observed at the time of inspection. Leahy Decl. ¶ 10; Goodwin Decl. ¶ 10; Woods Decl. ¶ 10.

**Response**: Defendants dispute the allegation that "many" licensees and registrants have multiple facilities listed under the same license or registration number, which is unsupported by competent evidence.  Defendants further dispute that the "animal inventory" is separate from an inspection report.  Defendants do not otherwise dispute the allegations.

8. Inspectors also are required to collect photographs or photocopies during their routine inspections, such as copies of enrichment plans or veterinary records that document particular AWA deficiencies. Animal Care Inspection Guide § 2.5.1, APHIS (rev. May 2018), https://www.aphis.usda.gov/animal_welfare/downloads/Animal-Care-Inspection-Guide.pdf; Leahy Decl. ¶ 11; Woods Decl. ¶¶ 11, 28, 54.

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants do not dispute that inspectors are required to collect photographs or photocopies when certain deficiencies are identified.

9. Inspection reports and related records are compiled whether or not there is an active or anticipated enforcement action relating to the facility, although a licensed facility with known deficiencies may receive more frequent inspections. Woods Decl. ¶¶ 7-8, 11.

**Response**: Defendants dispute the allegations concerning "related records," which is vague and undefined, but do not otherwise dispute the factual allegations.

10. APHIS has a separate division known as Investigative and Enforcement Services ("IES") that is not part of Animal Care, but rather provides "investigative, enforcement, and regulatory support services to Animal Care and other APHIS programs." Woods Decl. ¶ 12.

**Response**: Undisputed.

11. Prior to 2017, APHIS routinely made inspection reports and related information available to HSUS and the public. Leahy Decl. ¶ 12; Goodwin Decl. ¶ 12.

**Response**: Defendants dispute that APHIS made "related information available to HSUS and the public" and Defendants also dispute the implication that inspections reports are no longer available to HSUS and the public.  Defendants do not otherwise dispute the factual allegations.

12. APHIS previously routinely and consistently released inspection reports and related records without broadly applying the statutory redactions at issue in this case. Such released information has routinely and consistently included (among other things) the substance of the inspection reports, the name address of the licensee, inspection type, deficiencies found, animal inventories, and photographs. Leahy Decl. ¶ 12; Goodwin Decl. ¶ 12.

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants dispute Plaintiff's characterization of Defendants' application of FOIA exemptions as "broad[]" but do not otherwise dispute the factual allegations.

13. In 2012, APHIS improved access to AWA inspection reports by establishing a publicly accessible, searchable online database containing tens of thousands of pages of inspection reports. Any member of the public was able to access the database and search for inspection reports of specific facilities by name, customer ID, or certificate number, or specific legal violation. Leahy Decl. ¶ 13; Goodwin Decl. ¶ 13.

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants do not dispute that APHIS established an online database as described but dispute Plaintiff's characterization.

14. HSUS frequently accessed this database and synthesized information contained therein. Leahy Decl. ¶¶ 13, 16-18; Goodwin Decl. ¶¶ 13, 18, 27-31.

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants do not dispute the allegations.

15. In February of 2017, APHIS abruptly, and without any prior notice to the public, removed this database from its website. Leahy Decl. ¶ 14; Goodwin Decl. ¶ 14.

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants do not dispute the allegations.

16. HSUS, members of regulated industries, members of Congress, and others immediately demanded that APHIS reinstate the comprehensive database. See, e.g.,:

a. Letter from HSUS to USDA (Feb. 6, 2017), available at http://blog. humanesociety.org/wp-content/uploads/2017/02/2017-02-06-Notice-of-Violation _HSUS-v-USDA-No.-15-0197.pdf;

b. Letters from 120 Federal Lawmakers to President Trump and USDA (Feb. 13, 2017–Feb. 16, 2017), available at https://blog.humanesociety.org/wp-content /uploads/2017/02/House-Senate-letters-to-Trump-Admin.-on-USDA-purge.pdf;

c. Petland Reacts to USDA, Petland Decision (Feb. 6, 2017), https://www.petland .com/news/2017-2-6b.htm;

d. Nation's Best Zoos and Aquariums Disagree With Decision to Remove Online Access to USDA Inspection Reports, AZA (Feb. 6, 2017), https://www.aza.org

/aza-news-releases/posts/nations-best-zoos-and-aquariums-disagree-with-decision

-to-remove-online-access-to-usda-inspection-re; and

e. The USDA's Removal of Information About Animal Research Is a Step

Backwards for Transparency, Speaking of Research (Feb. 7, 2017),

https://speakingofresearch.com/2017/02/07/the-usdas-removal-of-information-

about-animal-research-is-a-step-backwards-for-transparency/.

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the

parties' motions for summary judgment because they do not relate to the claims in this case.   To

the extent a further response is required, Defendants do not dispute the allegations.

17. Following these demands, the agency restored online access to some records that

were previously housed on its inspection reports database. The new website allows

the public to view select inspection reports of select facilities. *See AWA Inspection*

*and Annual Reports*, APHIS https://www.aphis.usda.gov/aphis/ourfocus/

animalwelfare/sa_awa/awa-inspection-and-annual-reports (last visited Nov. 2, 2018).

Leahy Decl. ¶ 20; Goodwin Decl. ¶ 30.

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the

parties' motions for summary judgment because they do not relate to the claims in this case.   To

the extent a further response is required, Defendants do not dispute that the agency reposted

some documents to its website.

18. In March of 2017, HSUS began submitting FOIA requests to APHIS for AWA

records, such as inspection reports, that were once publicly available. Leahy Decl. ¶

22; Goodwin Decl. ¶ 16.

**Response:** Defendants do not dispute that Plaintiff submitted FOIA requests to APHIS for AWA records, including inspection reports.

19. Shortly thereafter, APHIS updated its website to state that those "seeking information from APHIS regarding inspection reports not currently posted to the website, regulatory correspondence, and enforcement related matters" should submit FOIA requests for such information. *See AWA Inspection and Annual Reports*, APHIS, https://www.aphis.usda.gov/aphis/ourfocus/animalwelfare/sa_awa/AWA-Inspection- and- nnual-Reports (as modified Apr. 5, 2017); Leahy Decl. ¶ 21. APHIS' website still contains this directive AWA Inspection and Annual Reports, APHIS, https://www.aphis.usda.gov/aphis/ourfocus/animalwelfare/sa_awa/  awa-inspection- and-annual-reports (last visited Nov. 2, 2018) ("Those seeking information from APHIS regarding inspection reports not currently posted to the website, regulatory correspondence, and enforcement related matters may submit Freedom of Information Act (FOIA) requests for that information.").

**Response**: Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants dispute that APHIS took action based on Plaintiff's demands, but do not otherwise dispute the allegations.

20. In August of 2017 APHIS reinstated a limited public search tool that allows the user to search for certain facilities, but not for others. For example, the user may enter the certificate number or city and state for one facility and see a history of inspection reports, but may enter the certificate number or city and state for another facility and see no results. *See Animal Care Public Search Tool*, APHIS,

> https://acis.aphis.edc.usda.gov/ords/f?p=118:1 (last visited Nov. 2, 2018); Leahy Decl. ¶ 20; Goodwin Decl. ¶¶ 14, 30.

**Response**: Defendants do not dispute that a public search tool was made available in August 2017, but Defendants dispute that any inspection reports for the past three years are not available on the site. Supplemental Declaration of Tonya G. Woods ("Suppl. Woods Decl.") ¶¶ 19-24. Defendants do not dispute that for licensees designated as individuals and/or homestead business, a user cannot search by name or certificate number.

> 21. The subject of FOIA Request 2017-APHIS-05532-F is Natural Bridge Zoo, a public exhibition facility in Natural Bridge, Virginia, with a history of animal care deficiencies. Leahy Decl. ¶¶ 23-30.

**Response**: Defendants do not dispute that the subject of FOIA Request 2017-APHIS-05532-F is Natural Bridge Zoo, a public exhibition facility in Natural Bridge, Virginia, and that APHIS has previously identified deficiencies at Natural Bridge Zoo.

> 22. HSUS viewed Natural Bridge Zoo's inspection reports online for years prior to the removal of the comprehensive database. Leahy Decl. ¶ 24.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case. To the extent a further response is required, Defendants do not dispute the allegations.

> 23. In 2014, HSUS conducted an undercover investigation at Natural Bridge Zoo. The HSUS Investigates: Natural Bridge Zoo in Natural Bridge, Virginia, HSUS (2015), http://www.humanesociety.org/assets/pdfs/wildlife/exotics/roadside-zoo-natural-bridge.pdf; Leahy Decl. ¶¶ 24-25.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.    To the extent a further response is required, Defendants do not dispute the allegations.

24. After its 2014 investigation, HSUS submitted a 159-page complaint to USDA, noting that the practices observed at the facility "raise serious concerns about the safety of both the animals and the public at the facility." The complaint documented these and other issues, elaborating on HSUS' investigative report, and was supported by photographic and video evidence, as well as 15 exhibits explaining in detail exactly what was observed, corresponding to specific video clips. Leahy Decl. ¶¶ 25-26.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.    To the extent a further response is required, Defendants do not dispute the allegations.

25. In the complaint, HSUS stated that the veterinary medical officer ("VMO") currently assigned to the facility acted improperly, as several APHIS inspections conducted during the investigation "indicate that the current VMO does not perform thorough, objective inspections, does not document all the deficiencies identified during inspection, and engages in unprofessional conduct, including providing advice to the licensee on exploiting weaknesses in the AWA." The complaint detailed the investigator's observations on these issues, supported by video evidence with a corresponding index for each observation. Leahy Decl. ¶ 27.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.    To the extent a further response is required, Defendants do not dispute the allegations.

26. The complaint also stated that APHIS inconsistently enforces the AWA, noting that llamas at Natural Bridge Zoo "have not been sheared in years and have heavily matted coats," and that Natural Bridge Zoo "has never been cited for this obvious deficiency, even though other exhibitors are commonly cited to this problem." HSUS provided citations of inspection reports to other facilities in order to demonstrate inconsistent enforcement. Leahy Decl. ¶¶ 26, 29.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants do not dispute the allegations.

27. In 2015, HSUS petitioned USDA to revoke Natural Bridge Zoo's license, citing the substance of publicly available inspection reports. Leahy Decl. ¶ 30.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants do not dispute the allegations.

28. On July 14, 2017, HSUS submitted a FOIA request to APHIS for "complete copies of all inspection reports from January 1, 2015 to the time the agency fulfills this request, for any USDA-licensed facilities operating under USDA Certificate No. 52-C-0035" ("NBZ FOIA Request"). APHIS acknowledged receipt of this request and assigned tracking number 2017-APHIS-05532-F to this request. Leahy Decl. ¶ 23, Ex. B.

**Response:** Undisputed.

29. USDA Certificate No. 52-C-0035 is issued to Karl Mogensen, who operates Natural Bridge Zoo. Leahy Decl. ¶ 23.

**Response:** Undisputed.

30. APHIS' Response to the NBZ FOIA Request was due on August 11, 2017. Leahy Decl. ¶ 23, Ex. B.

**Response:** Undisputed.

31. On January 25, 2018, HSUS sent APHIS and USDA a letter informing the agency that APHIS's response to the NBZ FOIA Request was well overdue, and that HSUS intended to seek judicial review if APHIS failed to issue a final determination under FOIA within seven calendar days. Leahy Decl. ¶ 32, Ex. D.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants do not dispute the allegations.

32. On January 30, 2018, APHIS issued its response to the NBZ FOIA Request ("NBZ FOIA Response"). In its response, the agency identified 800 pages of responsive documents and 11 responsive videos, but stated that "certain information is exempt from release pursuant to FOIA Exemption (b) (6) and (b)(7)(c)." Leahy Decl. ¶ 33, Ex. E.

**Response:** Undisputed.

33. Among the inspection information redacted were: the exhibitor's business address; inspection type, inspection ID, and date of inspection; the entire substance of all inspection reports, including any documentation of deficiencies; species and numbers of animals held at the facility; methods of euthanasia used on the animals; veterinary protocols, such as routine vaccinations; species subjected to certain medical tests; animals' medical histories; the entirety of all 663 photographs; and the entirety of all

11 videos. APHIS advised HSUS of its right to appeal this determination. Leahy Decl. ¶ 33, Ex. E.

**Response:** Defendants dispute that the year of inspection was redacted in the referenced release.

34. On February 12, 2018, HSUS submitted an appeal of the NBZ FOIA Response ("NBZ FOIA Appeal"). In the NBZ FOIA Appeal, HSUS stated that:

a. FOIA Exemptions 6 and 7(C) do not apply to the redacted information, because there is no privacy interest at issue, and even if there were, the public interest in disclosing this information clearly outweighs any privacy interest;

b. The threshold inquiry of FOIA Exemption 7 does not apply to at least some of the redacted information, because this data was not compiled for law enforcement purposes;

c. USDA failed to release reasonably segregable portions of responsive records; and

d. USDA's redactions were arbitrary and capricious because, among other reasons, USDA did not adequately explain its diversion from its long-held policy of releasing this information.

**Response:** Undisputed.

35. By a letter dated February 12, 2018, APHIS acknowledged receipt of the NBZ FOIA Appeal, assigning it tracking number 2018-APHIS-00188-A. Leahy Decl. ¶ 34, Ex. F

**Response:** Undisputed.

36. USDA's response to the NBZ FOIA Appeal was due on March 13, 2018. Leahy Decl. ¶ 35, Ex. G.

**Response:** Undisputed.

37. On March 13, 2018, the day the agency's response was due, the agency contacted HSUS to state that it did not intend to meet its statutory deadline, but provided no estimated date of response. Leahy Decl. ¶ 36, Ex. H.

**Response:** Defendants do not dispute that the agency contacted HSUS on or about March 13, 2018, but otherwise dispute the allegations.

38. USDA never responded to the NBZ FOIA Appeal. Leahy Decl. ¶ 36.

**Response:** Undisputed.

39. On August 28, 2018, after HSUS filed the instant lawsuit, APHIS provided HSUS with a Bates-stamped response to the NBZ FOIA Request, including additional pages not previously provided. The additional pages were redacted photographs, this time labeled with the name of the APHIS photographer and name and certificate number of the licensee. APHIS redacted the inspection number, description of the photograph, and date of inspection (other than year), and the entirety of the photographs. The only exceptions were two pages, stamped as 000704 and 000705, which released the entirety of the photograph, with the exception of redacting a small rectangle to hide the image of a member of the public, as well as a small rectangle redacting the date on the photograph. For 000704 and 000705, the agency also released the description of the photograph. Leahy Decl. ¶ 37, Ex. K.

**Response:** Undisputed.

40. On July 26, 2017, HSUS submitted a FOIA request for "copies of inspection reports created or obtained in 2016 or 2017 for the following dealers:

• Marvin Burkholder/Berlin Kennel – Millersburg, OH (# 31-A-0224)

• Owen Yoder – Millersburg, OH (# 31-A-0198)

• Little Puppies Online – Mount Vernon, OH (# 31-B-0174)

• Evergreen Designer LLC – Charm, OH (# 31-A-0412).”

("Dealer FOIA Request"). Goodwin Decl. ¶ 17, Ex. A.

**Response:** Undisputed.

41. All of the dealers identified in the Dealer FOIA Request are businesses that are licensed by APHIS to breed and sell dogs and puppies. Goodwin Decl. ¶ 18.

**Response:** Defendants dispute the factual allegation.  Two of the dealers identified in the FOIA request were determined to be non-residential businesses.   The remaining dealers were determined to be individuals or homestead businesses.  Suppl. Woods Decl. ¶ 16.

42. Prior to February of 2017, APHIS had posted inspection reports of all of these facilities on its website through its comprehensive online database. Goodwin Decl. ¶ 18.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.    To the extent a further response is required, Defendants do not dispute the allegations.

43. Each of these facilities had AWA violations in the inspection reports that HSUS was previously able to access. Goodwin Decl. ¶ 18.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.    To the extent a further response is required, Defendants cannot respond without disclosing information protected by the FOIA.

44. On July 27, 2017, APHIS acknowledged receipt of this request and assigned tracking number 2017-APHIS-05532-F to this request. Goodwin Decl. ¶ 17, Ex. A.

**Response:** Defendants do not dispute the factual allegations in this paragraph but clarify that the request number was 2017-APHIS-05755.

45. APHIS' Response to the Dealer FOIA Request was due on August 23, 2017. Goodwin Decl. ¶ 17, Ex. A.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants do not dispute the allegations.

46. On January 25, 2018, HSUS sent APHIS and USDA a letter informing the agency that APHIS's response to the Dealer FOIA Request was well overdue, and that HSUS intended to seek judicial review if APHIS failed to issue a final determination under FOIA within seven calendar days. Goodwin Decl. ¶ 20, Ex. B.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants do not dispute the allegations.

47. After HSUS sent this letter, on the same day, APHIS issued a response to the Dealer FOIA Request ("Dealer FOIA Response"). In its response, the agency produced 19 pages of documents but stated that "[t]he documents have been redacted in part under FOIA Exemption 6 and 7(c)." Among the inspection information redacted was the entire substance of all inspections, including any documentation of deficiencies, the licensees' business addresses, inspection ID numbers, inspection types, and inspection dates. APHIS advised HSUS of its right to appeal this determination. There were no photographs at issue in this FOIA request. Goodwin Decl. ¶ 21, Ex. C.

**Response:** Undisputed.

48. On February 12, 2018, HSUS submitted an appeal of the Dealer FOIA Response ("Dealer FOIA Appeal"). In the Dealer FOIA Appeal, HSUS stated that:

a. FOIA Exemptions 6 and 7(C) do not apply to the redacted information, because there is no privacy interest at issue, and even if there were, the public interest in disclosing this information clearly outweighs any privacy interest;

b. The threshold inquiry of FOIA Exemption 7 does not apply to the redacted information, because this data was not compiled for law enforcement purposes; and c. USDA's redactions were arbitrary and capricious because, among other reasons, USDA did not adequately explain its diversion from its long-held policy of releasing this information.

c. USDA's redactions were arbitrary and capricious because, among other reasons, USDA did not adequately explain its diversion from its long-held policy of releasing this information.

Goodwin Decl. ¶ 22, Ex. D.

**Response:** Undisputed.

49. By a letter dated February 12, 2018, APHIS acknowledged receipt of the Dealer FOIA Appeal, assigning it tracking number 2018-APHIS-00187-A. Goodwin Decl. ¶ 23, Ex. E.

**Response:** Undisputed.

50. USDA's response to the Dealer FOIA Appeal was due on March 13, 2018. Goodwin Decl. ¶ 23, Ex. E.

**Response:** Undisputed.

51. On March 12, 2018, the day before the agency's response was due, the agency contacted HSUS to state that it did not intend to meet its statutory deadline, but provided no estimated date of response. Goodwin Decl. ¶ 24, Ex. F.

**Response:** Defendants do not dispute that the agency contacted HSUS on or about March 12, 2018, but otherwise dispute the allegations.

52. On March 14, 2018, USDA sent its final response to the Dealer FOIA Appeal. The agency's response reiterated its original position that the redacted information was properly withheld under Exemptions 6 and 7(C) with the exception of one document. This one document, an inspection report for Evergreen Designer LLC, contained no FOIA redactions. Goodwin Decl. ¶ 25, Ex. G.

**Response:** Undisputed.

53. The availability of inspection reports and ability to monitor APHIS' administration of the AWA is of great importance to many members of the public. Since APHIS took down its comprehensive database in February of 2017, many have called on USDA to release inspection reports. *See, e.g.:*

   a. USDA: Stop Hiding Animal Welfare Records and Covering for Abusers, Care2 Petition (June 2017), https://www.thepetitionsite.com/takeaction/304/134/376/ (signed by 161,295 members of the public);

   b. H.R. Rep. 115-232 at 28, (July 17, 2017), available at https://www.congress.gov/115/crpt/hrpt232/CRPT-115hrpt232.pdf ("The online searchable database should allow analysis and comparison of data and

include all inspection reports, annual reports, and other documents related to enforcement of the HPA and the AWA.");

c. H.R. Rep. 115-706 at 28 (May 24, 2018), available at https://www.congress.gov/115/crpt/hrpt706/CRPT-115hrpt706.pdf ("USDA ceased posting searchable records in February 2017 for the Animal Care Inspection System pending a comprehensive review of the information on its website. The Department has not acted in full on the results of that review nor provided sufficient rationale to withhold inspection information. APHIS is directed to utilize the resources provided in this bill to resume posting all records where legally permissible and provide searchable records without delay.")

**Response:** Defendants dispute that the withholdings at issue here are of great importance to the public. Defendants do not dispute that certain groups have requested USDA to release inspection reports.

54. Employees of HSUS have personally given many interviews to members of the press, and provided testimony at agency hearings, on the issue of APHIS's withholding of AWA inspection records since February of 2017. Goodwin Decl. ¶ 15.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case. To the extent a further response is required, Defendants do not dispute the allegations.

55. USDA's Office of the Inspector General ("OIG") has repeatedly concluded that APHIS's inspection and enforcement activities are deficient. For example, OIG has stated:

a. "[W]e found that APHIS could make improvements in enforcement and inspection to ensure compliance with the AWA." OIG, Audit Report 33601-0001-31, APHIS: Animal Welfare Act – Marine Mammals (Cetaceans) at Preamble (May 2017), available at https://www.usda.gov/oig/webdocs/33601-0001-31.pdf;

b. "Inspections are not always uniformly completed or adequately documented because of insufficient guidance; this reduces assurances that those exhibitors are in compliance with the AWA." Id.

c. "Such ambiguity causes inconsistent inspections and could lead to health and safety issues for animals and the public." Id.

d. "APHIS Needs to Improve Procedures and Documentation for Inspections." Id. at 9.

e. "[A]gency officials also need to strengthen their inspection requirements for exhibiting dangerous animals." OIG, Audit Report 33601-10-Ch, Controls Over APHIS Licensing of Animal Exhibitors at 1 (June 2010), available at https://www.usda.gov/oig/webdocs/33601-10-CH.pdf;

f. "We also found that . . . current inspection procedures still allow non-exhibitors to obtain and keep such licenses." Id. at 2.

g. "[W]e found that, for 6 of 40 traveling exhibitors we reviewed, Animal Care inspectors could not perform timely reinspections to ensure that serious noncompliant items that were identified in previous inspections had been resolved. . . . . Without reinspection, APHIS Animal Care inspectors cannot determine if serious safety violations cited have been corrected." Id. at 2.

h. "APHIS Needs to Strengthen the Inspection Process to Safeguard the Public at Animal Exhibitors." Id. at 6.

i. "APHIS Needs to Improve Their Tracking of Licensees That Travel with Their Exhibits." Id. at 18.

j. "AC's enforcement process was ineffective in achieving dealer compliance with AWA and regulations, which are intended to ensure the humane care and treatment of animals." OIG, Audit Report 33002-4-SF, APHIS Animal Care Program Inspections of Problematic Dealers at 1 (May 2010), available at https://www.usda.gov/oig/webdocs/33002-4-SF.pdf;

k. "The agency . . . chose to take little or no enforcement action against most violators. . . . Therefore, relying heaving on education for serious or repeat violators—without an appropriate level of enforcement—weakened the agency's ability to protect the animals." Id..

l. "[W]e noted that 6 of 19 inspectors did not correctly report all repeat or direct violations (those that are generally more serious and affect the animals' health)." Id. at 2.

m. "APHIS Misused Guidelines to Lower Penalties for AWA Violators." Id.

n. "AC's Enforcement Process Was Ineffective Against Problematic Dealers." Id. at 8.

o. "We found cases where the Eastern Region declined to take enforcement action against violators who compromised public safety and animal health. . . . As a result, the two regions are inconsistent in their treatment of violators; the percentage of repeat violators (those with 3 or more consecutive years with

violations) is twice as high in the Eastern Region than in the Western Region." OIG, Audit Report 33002-3-SF, APHIS Animal Care Program Inspection and Enforcement Activities at ii (Oct. 2005), available at https://www.usda.gov/oig/webdocs/33002-03-SF.pdf. p. "Some VMOs …do not verify the number of animals used in medical research or adequately review the facilities' protocols and other records." Id., at 4.

q. "APHIS' stipulated fines assessed against violators of the AWA are usually minimal. Under current policy, APHIS gives an automatic 75-percent discount to almost all violators—including research facilities—as a means of amicably reaching an agreement on the amount of the fines and avoiding court. As a result, violators now consider the monetary stipulation as a normal cost of doing business rather than as a deterrent for violating the AWA." Id. at 10.

r. "AC Needs To Improve Its Monitoring of Research Facilities." Id. at 13.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.   To the extent a further response is required, Defendants do not dispute that the cited documents contain the quoted statements.

56. Without knowing which inspection reports relate to which facilities, one cannot ascertain, for example:

a. Whether APHIS has ever inspected a specific facility, or has gone years without inspecting a facility;

b. Whether APHIS has conducted the annual inspections that are required for certain types of facilities under the AWA;

c. Whether and how APHIS is applying the AWA uniformly or disparately across different facilities;

d. Whether and how APHIS is addressing repeat violations across inspection reports for a single facility (as opposed to citing first-time violations across inspection reports for different facilities);

e. Whether APHIS is timely re-inspecting facilities to ensure that deficiencies noted on prior inspection reports are addressed by noted "correct by" dates;

f. Whether, in the case of "no access" violations, USDA ever returned and gained access; or

g. Whether APHIS conducted an investigation after a complaint was submitted regarding a specific facility or an incident was reported in the press.

Leahy Decl. ¶ 15; Goodwin Decl. ¶ 26.

**Response:** Defendants dispute the factual allegations in this paragraph.  Suppl. Woods Decl. ¶¶ 17-28; Reply in Supp. of Defs' Mot. for Summ. J. and Opp'n to Pl's Cross-Mot. for Summ. J ("Defs' Reply") at 17-20.

57. HSUS receives complaints about the mistreatment of animals at various exhibition facilities, as well as complaints about sick puppies purchased from specific breeders. HSUS also monitors the press for animal care-related incidents (such as reports of exotic animals escaping from their enclosures or traveling exhibitions). HSUS uses inspection reports to ascertain whether APHIS is identifying animal care deficiencies at such locations, and whether HSUS or other members of the public should report potential violations to the APHIS. Leahy Decl. ¶ 16; Goodwin Decl. ¶ 29; See HSUS,

Petition    for    Rulemaking    Ex.    C    (2015),    available    at

https://www.aspca.org/sites/default/files/pmp_part_1.pdf.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the

parties' motions for summary judgment because they do not relate to the claims in this case.    To

the extent a further response is required, Defendants does not dispute the allegations.

58. HSUS has, in the past, based on information found in inspection reports, submitted

petitions for license revocation. APHIS has granted several of those petitions. Leahy

Decl. ¶¶ 17, 30, Ex. A; Goodwin Decl. ¶ 31, Ex. H.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the

parties' motions for summary judgment because they do not relate to the claims in this case.    To

the extent a further response is required, Defendants do not dispute that Plaintiff may have

sought to have licenses revoked, but Defendants dispute that APHIS has revoked licenses on the

basis of those petitions. The Secretary of Agriculture may only revoke a license under the AWA

after providing the licensee notice and an opportunity for a hearing before an Administrative

Law Judge in accordance with the applicable Rules of Practice.

59. HSUS has also used information found in inspection reports, linked to specific

facilities, to petition the government for regulatory change, such as for better

guidance for industry to promote the psychological wellbeing of nonhuman primates,

and for a rulemaking to ensure more humane treatment of conditions at commercial

dog breeding facilities. Linking individual facilities to specific reports was important

for highlighting, for example, inconsistencies in the application of the AWA among

various facilities, as well as whether APHIS properly followed up with an issue or

properly cited to repeat violations. Leahy Decl. ¶ 18; Goodwin Decl. ¶ 27.

**Response:** Defendants dispute that the factual allegations in this paragraph are "material" to the parties' motions for summary judgment because they do not relate to the claims in this case.    To the extent a further response is required, Defendants do not dispute that Plaintiff has used information in inspection reports in its lobbying efforts.    Defendants dispute that "linking individual facilities to specific reports was important for highlighting, for example, inconsistencies in the application of the AWA among various facilities, as well as whether APHIS properly followed up with an issue or properly cited to repeat violations." *See* Reply at 17-20.

60. Address is also important for ascertaining whether APHIS is allowing multiple licensees to operate the same facility. Leahy Decl. ¶ 19; Goodwin Decl. ¶ 32.

**Response:** Defendants dispute that the allegations in this paragraph are factual.

61. Identification merely be city and state is insufficient to ascertain which facility an inspection report pertains to, as there are frequently multiple licensees or registrants in the same city. For example, there are over 80 licensed breeders in Millersburg, Ohio. See Listing of Certificate Holders at 406-12, USDA, https://www.aphis.usda.gov/animal_welfare/downloads/ List-of-Active-Licensees-and-Registrants.pdf.

**Response:** Undisputed.

62. In commercial dog breeding, facilities frequently change their names. In such cases, a facility may begin to use a business name instead of an individual name (while maintaining the same certificate number or customer ID), or even seek a new license under a name of a family member (obtaining a new certificate number and customer ID, but operating at the same address). Therefore, in order to track APHIS'

administration of the AWA with regard to a specific facility, it is important to have not only the name of the facility, but also the certificate number, customer ID, and address. Goodwin Decl. ¶ 33.

**Response:** Defendants dispute the allegation that facilities "frequently" change their names, which is unsupported by competent evidence. Defendants further dispute that it is necessary to know the certificate number, customer ID, and address of a facility in order to track APHIS's administration of the AWA at a facility. Suppl. Woods. Decl. ¶¶ 17-28.

63. Certificate number and customer ID are also needed because even within one city there are frequently multiple commercial breeders with the same or very similar names. See Listing of Certificate Holders at 406-12, USDA, https://www.aphis.usda.gov/animal_welfare/ downloads/ List-of-Active-Licensees-and-Registrants.pdf (of the over 80 licensed breeders in Millersburg, Ohio, over twenty are named "Yoder" and over twenty are named "Miller").

**Response:** Defendants do not dispute that of the over 80 licensed breeders in Millersburg, Ohio, over twenty are named "Yoder" and over twenty are named "Miller." The remainder of the allegations contain Plaintiff's opinion, not statements of fact.

64. Inspection date is important for understanding how APHIS' administration of the AWA changes over time, how APHIS is addressing deficiencies that occur repeatedly, and whether APHIS is properly reinspecting to ensure a facility has come into compliance by APHIS' specified date. Leahy Decl. ¶ 19; Goodwin Decl. ¶ 32.

**Response:** This paragraph contains Plaintiff's opinion, not statements of fact. Defendant disputes that there is a public interest in the inspection month and day. *See* Reply at 11-21.

65. Monitoring proper veterinary care is one of APHIS' responsibilities under the AWA.
    Knowing the name of a veterinarian used at a particular facility could reveal
    information about that facility's veterinary care. For example, if a facility is using a
    veterinarian without a license or who is undergoing disciplinary proceedings, this
    would be directly relevant to whether the facility is providing adequate veterinary
    care, and whether APHIS is checking for or enforcing against this. Leahy Decl. ¶ 19.

**Response:** Defendants do not dispute the first sentence of this paragraph.  The remainder of the
paragraph contains Plaintiff's opinion, not statements of fact.  Defendant disputes that there is a
public interest in the name of a veterinarian used at a particular facility.  *See* Reply at 20-21.

Respectfully submitted,

JESSIE K. LIU, D.C. BAR # 472845
United States Attorney

DANIEL F. VAN HORN, D.C. BAR #924092
Chief, Civil Division

_____/s/_____

JOSHUA KOLSKY, D.C. BAR # 993430
Assistant United States Attorney
District of Columbia
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2541
Fax: (202) 252-2599
joshua.kolsky@usdoj.gov

*Counsel for Defendants*